ESTATE OF GIBBS: KRAUSE (Robert J.), Appellant, v.
KRAUSE (Robert W.), Respondent.

*October 3—October 31, 1961.*

For the appellant there was a brief by *Goldberg, Previant & Cooper,* and oral argument by *Francis X. Swietlik, Jr.,* all of Milwaukee.

For the respondent there was a brief by *Tilg & Koch,* attorneys, and *Howard A. Morse* of counsel, all of Milwaukee, and oral argument by *Howard A. Tilg.*

FAIRCHILD, J. 1. *The intention of the testators as determined from all the evidence.* The evidence leads irresistibly to the conclusion that Mr. and Mrs. Gibbs intended legacies to respondent, and that the use of the middle initial "J." and the address on North Forty-Sixth street resulted from some sort of mistake.

Respondent testified that he met Mr. Gibbs about 1928. From 1930 to 1949 he was employed as superintendent of a steel warehouse where Mr. Gibbs was his superior. They

worked in close contact. Until 1945 the business belonged to the Gibbs Steel Company. In that year the business was sold, but Mr. Gibbs stayed on for four years in a supervisory capacity. Respondent remained with the new company until 1960. After 1949 Mr. Gibbs occasionally visited the plant and saw the respondent when there. From 1935 to 1955 respondent took men occasionally to the Gibbs home to do necessary work about the place. He also visited there socially several times a year and saw both Mr. and Mrs. Gibbs. Mrs. Gibbs had made a few visits at the plant before 1949 and respondent had seen her there. Mr. Gibbs did not visit respondent's home, although on a few occasions had telephoned him at home. Mr. Gibbs always called respondent "Bob."

Miss Krueger, who had been the Gibbs housekeeper for twenty-four years up to 1958 and was a legatee under both wills, corroborated much of respondent's testimony. She also testified that Mr. Gibbs had told her he made a will remembering various people including "the boys at the shop," referring to them as "Mike, Ed, and Bob."

Miss Pacius, a legatee under both wills, who had been Mr. Gibbs' private secretary for many years while he was in business, testified to Mr. Gibbs' expressions of high regard for respondent. Another former employee also testified to a similar effect.

Of the individuals named in the wills as legatees, all except two were shown to be relatives of Mr. or Mrs. Gibbs, former employees, neighbors, friends, or children of friends. The two exceptions were named near the end of the will and proof as to them may have been inadvertently omitted. "Mike," named in the will, was a warehouse employee under the supervision of respondent.

The attorney who drew several wills for Mr. and Mrs. Gibbs produced copies of most of them. They were similar in outline to the wills admitted to probate except· that

Mr. Gibbs' wills executed before Mrs. Gibbs' death bequeathed his property to her if she survived. The first ones were drawn in 1953 and each contained a bequest to "Robert Krause, of Milwaukee, Wisconsin, if he survives me, one per cent (1%)." There was testimony that Mrs. Gibbs' will, executed in August, 1955, contained the same language. In the 1957 wills the same bequest was made to "Robert Krause, now of 4708 North 46th Street, Milwaukee, Wisconsin." In several other instances street addresses of legatees were given for the first time in 1957. In the 1958 wills the same bequest was made to "Robert J. Krause, now of 4708 North 46th Street, Milwaukee, Wisconsin." The scrivener also produced a handwritten memorandum given to him by Mr. Gibbs for the purpose of preparing Mr. Gibbs' 1958 will, and the reference on that memorandum corresponding to the Krause bequest is "Bob, 1%." Four bequests (to Gruener, Krause, Preuschl, and Owen) appear in the same order in each of the wills and are reflected in the memorandum referred to as "Fred Gruener, Bob, Mike, and Ed." Gruener, Preuschl, and Owen were former employees of Gibbs Steel Company, as was respondent. Owen's residence is given as Jefferson, Wisconsin, in all the wills. In the 1953 wills, the residence of Gruener, Krause, and Preuschl was given only as Milwaukee, Wisconsin. A street address was inserted for the first time in each case in the 1957 wills, and repeated in the later ones.

Prior to 1950 respondent had lived at several different locations. From 1950 until April, 1960, he lived at 2325 North Sherman Boulevard. We take judicial notice that this address and 4708 North Forty-Sixth Street are in the same general section of the city of Milwaukee, and that both are a number of miles distant from the Gibbs home. We also take judicial notice that the telephone directory for Milwaukee and vicinity listed 14 subscribers by the name

of Robert Krause with varying initials in October, 1958, and 15 in October of 1959. The listing for appellant gives his middle initial *J*. as well as his street address.

The only evidence which suggests even a possibility that Mr. or Mrs. Gibbs may have known of appellant may be summarized as follows:

For a time, appellant had a second job as a part-time taxi driver, and he recalled an elderly lady who was his passenger on a lengthy taxi trip in June, 1955. He did not recall where he picked her up. He had driven her across the city, waiting for her while she visited in a hospital, and then driven her back across the city. The place where he let her out, however, was not her home. He did not recall that she had given him her name, but she had inquired as to his. They had conversed about the illness of appellant's wife and his working at an extra job in order to make ends meet. She had expressed sympathy and approval of his efforts. Presumably when he was notified that his name appeared in the Gibbs wills as legatee, he endeavored to find an explanation of his good fortune and concluded that the lady in question must have been Mrs. Gibbs. The 1955 taxi ride, however, could not explain the gift to Robert Krause in the 1953 wills, and it is clear that the same legatee was intended in the Krause bequests in all the wills. Moreover, appellant's description of his taxi passenger differed in several particulars from the description of Mrs. Gibbs given by other witnesses.

2. *Propriety of considering extrinsic evidence.* As stated above, the county court could reach no other conclusion upon consideration of the extrinsic evidence than that Mr. and Mrs. Gibbs intended to designate respondent as their legatee. The difficult question is whether the court could properly consider such evidence in determining testamentary intent.

Under rules as to construction of a will, unless there is ambiguity in the text of the will read in the light of surrounding circumstances, extrinsic evidence is inadmissible for the purpose of determining intent.[1]

A latent ambiguity exists where the language of the will, though clear on its face, is susceptible of more than one meaning, when applied to the extrinsic facts to which it refers.[2]

There are two classes of latent ambiguity. One, where there are two or more persons or things exactly measuring up to the description in the will;[3] the other where no person or thing exactly answers the declarations and descriptions of the will, but two or more persons or things answer the description imperfectly. Extrinsic evidence must be resorted to under these circumstances to identify which of the parties, unspecified with particularity in the will, was intended by the testator.[4]

Had the probated wills used the language of the 1953 wills "To Robert Krause of Milwaukee," such terms would have described both appellant and respondent, as well as a number of other people. Upon such ambiguity of the first type above mentioned becoming apparent, extrinsic evidence would be admissible in order to determine which Robert Krause Mr. and Mrs. Gibbs had in mind as their legatee.

Had the will said "To my former employee, Robert J. Krause of 4708 North 46th Street," neither appellant nor respondent would have exactly fulfilled the terms. Latent ambiguity of the second type would thus have appeared, and again extrinsic evidence would be admissible to determine what individual testators had in mind.

[1] *Estate of Breese* (1959), 7 Wis. (2d) 422, 96 N. W. (2d) 712.
[2] *Will of Frost* (1958), 3 Wis. (2d) 603, 89 N. W. (2d) 216; 57 Am. Jur., Wills, p. 676, sec. 1042.
[3] *Estate of Pierce* (1922), 177 Wis. 104, 188 N. W. 78.
[4] Anno. 94 A.L.R. 26, 47–51.

The wills containing, as they do, similar bequests to a long list of individuals, each bearing some relationship of blood, friendship, or former employment to Mr. or Mrs. Gibbs, come close to implying that every legatee named has some such relationship. Nevertheless the wills do not refer to Krause as standing in any particular relationship.

The terms of the bequest exactly fit appellant and no one else. There is no ambiguity.

"An ambiguity is not that which may be made doubtful by extrinsic proof tending to show an intention different from that manifested in the will, but it must grow out of the difficulty of identifying the person whose name and description correspond with the terms of the will." [5]

Under the circumstances before us, can a court properly consider evidence showing that some of the words were used by mistake and should be stricken or disregarded? It is traditional doctrine that wills must not be reformed even in the case of demonstrable mistake.[6] This doctrine doubtless rests upon policy reasons. The courts deem it wise to avoid entertaining claims of disappointed persons who may be able to make very plausible claims of mistake after the testator is no longer able to refute them.

Although the courts subscribe to an inflexible rule against reformation of a will, it seems that they have often strained a point in matters of identification of property or beneficiaries in order to reach a desired result by way of construction. In *Will of Stack* [7] where the will devised "Block 64," the court included part of block 175 in the provision to conform to the unexpressed intent of the testator. In *Will of Boeck* [8] where the will devised the "northeast

---

[5] *Ward v. Espy* (1846), 25 Tenn. (6 Humph.) 447, 449.

[6] *Estate of Grove* (1959), 6 Wis. (2d) 659, 95 N. W. (2d) 788; *Will of Hipsch* (1953), 265 Wis. 446, 62 N. W. (2d) 18; *Estate of Gray* (1953), 265 Wis. 217, 61 N. W. (2d) 467.

[7] (1934), 214 Wis. 98, 251 N. W. 470.

[8] (1915), 160 Wis. 577, 152 N. W. 155.

quarter of the northwest quarter" of a section, which was not owned by the testator, the court held such provision passed the southeast quarter of the northwest quarter, to conform to the misexpressed intent of the testator. In *Moseley v. Goodman* [9] where testator bequeathed property to "Mrs. Moseley," the court denied the claim of Mrs. Lenoir Moseley to the gift and held that Mrs. Trimble had been intended by the testator. Mrs. Trimble was known to the testator by the nickname "Mrs. Moseley."

In *Estate of Miller* [10] testator left property to "William Wilson's children." Relying on evidence that testator frequently confused William Wilson with his brother Seth, the court held the gift should go to the children of Seth Wilson, who had been intended by the testator. In *Groves v. Culph* [11] testator devised a remainder interest in part of lot 15 to his daughter. The court, to conform to testator's true intent, included part of lot 16 in this devise. In *Castell v. Tagg* [12] and *Geer v. Winds* [13] the testator omitted a child from his will by mistake. The court inserted in the will the gift which had been intended for the child by the parent. In *Beaumont v. Fell* [14] a bequest to "Catharine Earnley" was proven to have been intended for Gertrude Yardley, and was given to the latter, and in *Masters v. Masters* [15] a gift to "Mrs. Sawyer" was given to Mrs. Swopper, because testator knew no one by the former name. In the two cases last mentioned, no one with the name given in the will claimed the gift.

---

[9] (1917), 138 Tenn. 1, 195 S. W. 590.
[10] (1904), 26 Pa. Super. Ct. 443.
[11] (1892), 132 Ind. 186, 31 N. E. 569.
[12] (1836), 163 Eng. Rep. 102.
[13] (1810), 4 S. C. Eq. (4 Desauss.) 84 (*85).
[14] (1723), 24 Eng. Rep. 673.
[15] (1718), 24 Eng. Rep. 454.

We are also aware of the rule which allows a court in probating a will to deny probate to a provision in the document which was included by mistake. British courts will deny probate to a single word, or part of a sentence, thereby completely altering the provided dispositions.[16]

We conclude that details of identification, particularly such matters as middle initials, street addresses, and the like, which are highly susceptible to mistake, particularly in metropolitan areas, should not be accorded such sanctity as to frustrate an otherwise clearly demonstrable intent. Where such details of identification are involved, courts should receive evidence tending to show that a mistake has been made and should disregard the details when the proof establishes to the highest degree of certainty that a mistake was, in fact, made.

We therefore consider that the county court properly disregarded the middle initial and street address, and determined that respondent was the Robert Krause whom testators had in mind.

*By the Court.*—Orders affirmed.

BROADFOOT and BROWN, JJ., dissent.

---

[16] 1 Page, Wills (Bowe-Parker rev.), p. 675, sec. 13.7.