Estate of McDonald: McKee and another, Appellants,
v. McDonald, Executrix, Respondent.

*April 3—April 30, 1963.*

64

For the appellants there was a brief by *Peickert, Anderson & Fisher,* attorneys, and *John E. Shannon, Jr.,* and *Gerald M. O'Brien* of counsel, all of Stevens Point, and *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, also of counsel, and oral argument by *Mr. O'Brien.*

For the respondent there was a brief by *Evrard, Evrard, Duffy, Holman & Faulds* of Green Bay, and oral argument by *James R. Faulds.*

CURRIE, J.   The issue which confronts the court on this appeal is whether the county court, in construing the phrase "my children," is constrained to stay within the four corners of the will because the phrase is clear and unambiguous, or whether it may deem the phrase ambiguous, in view of the adoption by Bethe of testator's two children by testator's first marriage, and consider extrinsic evidence to ascertain testator's intent.

We start with the general principle that extrinsic evidence is usually not admissible to explain the word "children" appearing in a will. 57 Am. Jur., Wills, p. 692, sec. 1071. The word "children" usually includes children by different marriages. 95 C. J. S., Wills, p. 957, sec. 654. Furthermore, the word "children" includes children by a divorced wife. 4 Page, Wills (Bowe-Parker rev.), p. 434, sec. 34.16. Nevertheless, we do not consider that these principles control the instant case.

Here, we have two children of testator by a divorced wife who were adopted by her second husband as his own children with the consent of testator. In the sense that the two petitioners were fathered by testator, they are still his children. This court in *Will of Scholl* (1898), 100 Wis. 650, 656, 76 N. W. 616, declared. "The word 'children,' when not rendered obscure by the manner of its use, has a plain and well-understood ordinary signification. It means the descendants of human parents in the first degree." On the other hand, the 1926 adoption order had terminated testator's parental rights over petitioners and made them the children of Bethe. Thus a reasonable doubt or ambiguity is created as to whether testator meant to include the two petitioners along with his six children by the second marriage as residuary beneficiaries.

Such an ambiguity is of necessity a latent ambiguity and not a patent one. The test of latent ambiguity in Wisconsin was set forth recently in *Estate of Gibbs* (1961), 14 Wis. (2d) 490, 496, 111 N. W. (2d) 413, as follows:

"There are two classes of latent ambiguity. One, where there are two or more persons or things exactly measuring up to the description in the will; the other where no person or thing exactly answers the declarations and descriptions of the will, but two or more persons or things answer the description imperfectly. Extrinsic evidence must be resorted

to under these circumstances to identify which of the parties, unspecified with particularity in the will, was intended by the testator."

In 57 Am. Jur., Wills, p. 677, sec. 1042, the author states that, "a 'latent' ambiguity is one which is not discoverable from a perusal of the will but which appears upon consideration of the extrinsic circumstances, . . ." For an example of a latent ambiguity, which did not appear on the face of the will but was discoverable from extrinsic circumstances, see *Will of Boeck* (1915), 160 Wis. 577, 152 N. W. 155.

Existing statutory and case law is one of the extrinsic aids which may be consulted in resolving a will ambiguity by construction. *Lichter v. Thiers* (1909), 139 Wis. 481, 486, 121 N. W. 153, and *In re Moran's Will* (1903), 118 Wis. 177, 195, 96 N. W. 367. The reason for this is that testator is presumed to know the law—both statutory and case law. 57 Am. Jur., Wills, p. 759, sec. 1162. Where applicable law is to be looked to as a surrounding circumstance, it is the law in effect at the time of making the will. *Estate of Heard* (1951), 107 Cal. App. (2d) 225, 236 Pac. (2d) 810, 27 A. L. R. (2d) 1313; *Carpenter v. Browning* (1881), 98 Ill. 282; *In re Smith's Will* (1947), 70 N. Y. Supp. (2d) 797; 4 Page, Wills (Bowe-Parker rev.), p. 166, sec. 30.27. See also *Montclair Trust Co. v. Spadone* (1946), 139 N. J. Eq. 7, 49 Atl. (2d) 497, and *In re Dennis' Estate* (1925), 98 Vt. 424, 129 Atl. 166.

Testator's will was executed on October 9, 1953. At that time sec. 322.07 (1) and (4), Stats. 1951, as amended by ch. 398, Laws of 1953, provided:

"(1) *Except as otherwise provided in this section,* the effect of the order of adoption is to completely change the legal status of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents;

and to free the adopted person from all legal obligations to or on account of the natural parents, and *vice versa.*

" . . .

"(4) *The adopted person does not lose the right to inherit from his natural relatives.*" (Italics supplied.)

Thus by this statute, the 1926 adoption order changed the status of petitioners from children of testator to children of the adoptive parent Bethe in all respects except their right to inherit intestate property; petitioners still remained children of testator in this latter respect. This statute does not control but is merely one of the extrinsic aids to be considered in arriving at testator's intent. Nevertheless, if this statute were to control the result, petitioners would be testator's children for inheritance purposes and entitled to share the residuary bequest and devise made by testator's will.

In the recent case of *Estate of Breese* (1959), 7 Wis. (2d) 422, 96 N. W. (2d) 712, the question presented was whether the word "issue" as used by testatrix in her will included the adopted children of her deceased brother. This court concluded that there was no ambiguity in the will, when read in the light of surrounding circumstances, which would authorize the admission into evidence of conversations between testatrix and her attorney. It was held that the word "issue" did include the adopted children of testatrix's deceased brother. In the course of the opinion the court stated (p. 430) :

"We have arrived at this construction of the will without reference to any statutes, which in some cases are an aid in ascertaining the testator's intention. . . . In our view of the language of the will and of the surrounding circumstances there is no ambiguity and the resort to sec. 48.92 is not necessary as an aid in the construction of the testatrix's will."

The plain implication of this quoted language is that, even if an ambiguity had existed in the will, any use of the mentioned statute would have been merely as "an aid" and not as a controlling authority. Other extrinsic evidence of a testator's intent might outweigh the effect of such a statute.

The learned trial court, applying the principle that a will speaks as of the time of death of the testator, looked to the adoption statutes as they stood at the time of testator's death in 1960, to determine whether there was any ambiguity which would permit the introduction of extrinsic evidence. Between the date of execution of the will and testator's death, the legislature, by ch. 323, Laws of 1955, repealed sub. (4) of sec. 322.07, Stats., and, by ch. 575, Laws of 1955, enacted sec. 48.92 (2) which provides as follows:

"After the order of adoption is entered the relationship of parent and child between the adopted person and his natural parents, unless the natural parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist."

Because of these statutory changes, the trial court held that as of time of testator's death, the two petitioners were no longer children of the testator for any purpose. From this conclusion, the trial court held that it necessarily followed that the phrase "my children" in the residuary clause of the will did not apply to petitioners and that there was no ambiguity present which would permit resort to extrinsic evidence.

Because of our conclusion that latent ambiguity exists here in view of the 1926 adoption proceedings, it was error for the trial court to exclude extrinsic evidence bearing upon testator's intent. This requires that the judgment be reversed and the cause remanded for new trial. In the course

of the new trial, evidence as to circumstances surrounding testator at the time he executed his will in 1953, including evidence of testator's declarations, may be considered, if properly admissible, for any light it may shed on the meaning which testator intended to convey by use of the phrase "my children." *Estate of Breese, supra,* at pages 426–429; 9 Wigmore, Evidence (3d ed.), pp. 242–248, sec. 2474.

*By the Court.*—Judgment reversed, and cause remanded for a new trial consistent with this opinion.