IN the MATTER OF the ESTATE OF Robert Anthony
LOHR, Sr., a/k/a Robert A. Lohr, Sr.:

Robert A. LOHR, Jr., as Personal Representative and
Individually, Elaine Elizabeth Lohr, Patricia A. Lohr,
William J. Lohr, and James A. Lohr, Appellants,

v.

Gretchen G. VINEY, Respondent.

Court of Appeals

*No. 92-2490. Submitted on briefs January 25, 1993.—Decided
February 9, 1993.*

(Also reported in 497 N.W.2d 730.)

470

472

For the appellant, Robert E. Lohr, Jr., the cause was submitted on the briefs of *Richard W. Pitzner* and *William F. Mundt* of *Murphy & Desmond, S.C.,* Madison.

For the appellants, Elaine Lohr, Patricia Lohr, William J. Lohr and James Lohr, the cause was submitted on the briefs of *Allen D. Reuter* of *Clifford & Reuter, S.C.,* Madison.

For the respondent the cause was submitted on the brief of *Lawrence J. Wiesnesk* of *O'Melia, Schiek & McEldowney, S.C.,* Rhinelander.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. The Lohrs, individually, and Robert Lohr, Jr., as personal representative of the estate (collectively, "Lohrs"), jointly appeal the trial court's order construing Robert Lohr, Sr.'s (testator), will by adding a sentence to Article Five, Paragraph A, of the will. They contend that the trial court erroneously (1) exercised its discretion by concluding that attorney Gretchen Viney's petition to construe the will was not barred by equitable

473

estoppel and laches, (2) concluded that the will is ambiguous and (3) added a sentence to the will. The Lohrs argue that estoppel and laches bar Viney from filing the petition because the Lohrs relied on her failure to file the petition to construe the will when she first became aware of drafting mistakes. They also argue that the will is not ambiguous on its face or in its application because Article Six on its face provides for distribution of the estate in the event the testator's spouse survived him. Therefore, the Lohrs argue, no construction was necessary and, in any event, the court was without authority to add a sentence to the will. Because we conclude that equitable estoppel and laches do not bar Viney's petition for construction of the will, the will is ambiguous and the trial court properly construed the will, the order is affirmed.

## FACTS

The will was admitted to probate on waivers in early January 1990. Viney had drafted the will. In late January 1990, attorney Robert Pitzner wrote a letter to Miller, Rogers & Owens, the law firm with whom Viney was associated when she drafted the will, to inform the firm of an alleged drafting error. The letter explained that because of Viney's alleged failure to provide for the creation of a residual trust during the testator's spouse's lifetime, the estate was subject to federal taxes that could have been avoided via the unified credit.

In January 1991, after approximately one year of correspondence between Viney's attorneys and the Lohrs' attorneys that included at least one attempt to agree on an interpretation of the will, the Lohrs commenced a malpractice action against Viney, her former law firm and their malpractice insurance carriers. Meanwhile, the personal representative administered the

474

estate according to his interpretation of Article Six of the will and filed federal estate tax and Wisconsin inheritance tax returns.

In mid-October 1991, Viney petitioned to intervene in the estate for the purpose of filing a petition to construe the will. Viney offered as grounds for the petition the fact that the Lohrs had brought a malpractice action against her and that no person interested in the estate would protect her interests. The personal representative did not object to the petition, which the court granted in February 1992.

The trial court granted Viney's motion to construe the will and construed the first sentence of Article Five, Paragraph A, to provide for the creation of a residual trust if the testator's spouse was living thirty days after the testator's death. The court concluded that the petition to construe the will was not barred by laches or equitable estoppel because there is no statutory time limit for such a petition and the Lohrs' "prejudice" results from the personal representative's failure to request construction of the will himself and his distribution of the estate prior to judgment, especially in light of his awareness of the drafting problems. The court also concluded that several provisions of the will, when read together, are ambiguous concerning how the estate is to be distributed when the testator's spouse survives him by thirty days. Finally, the court concluded that its construction of Article Five was consistent with the testator's intent to take full advantage of tax-avoiding estate planning techniques.

## EQUITABLE ESTOPPEL

Estoppel may be applied where the inaction or action of the party against whom estoppel is asserted

induced reliance by another in the form of inaction or action to that person's detriment. *Gonzalez v. Teskey*, 160 Wis. 2d 1, 12, 465 N.W.2d 525, 530 (Ct. App. 1990). "The ultimate determination whether to apply estoppel is addressed to the trial court's discretion." *Id.* at 13, 465 N.W.2d at 530. We will affirm the trial court's exercise of its discretion if the record shows that the court correctly applied the legal standards to the facts and reached a reasoned conclusion. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20-21 (1981).

The trial court found that Viney's delay in filing her petition for construction of the will was not unreasonable, in light of the facts that there is no statutory time limit for petitioning for construction of the will and the construction of the will has significant implications in the malpractice action that was filed against her. We note that Viney was not served in the malpractice action until the end of January 1991, nine months prior to her petition to construe the will. Further, attorneys for both parties engaged in continuing correspondence attempting to reach an agreement whether there existed a drafting error that needed correcting, the proper method of correcting such error and negotiating a possible settlement to avoid litigation. Under these circumstances, we conclude that the trial court did not erroneously exercise its discretion by determining that estoppel did not bar Viney's petition to construe the will.

■

The Lohrs argue that the personal representative was induced to pay taxes and distribute the estate to the beneficiaries by Viney's delay in petitioning for construction of the will and failure to suggest legal authority contrary to the personal representative's conclusion that "the issue at hand could not be reformed by a judge on a petition for construction."

However, as the trial court noted, the continuing correspondence and disagreement concerning the existence of drafting errors should have put both parties on notice that questions remained concerning the proper construction of the will. Despite his knowledge that there were disputes concerning drafting errors and that he himself could file a petition for construction of the will, the personal representative proceeded to pay the taxes and distribute the estate. When a personal representative distributes the estate before entry of an order of distribution, he does so at his own risk. *Grover v. Grover*, 197 Wis. 347, 348, 222 N.W. 228, 228-29 (1928).

Equitable remedies are not available to one whose own actions or inactions result in the harm. *See State Bank of Drummond v. Christophersen*, 93 Wis. 2d 148, 160, 286 N.W.2d 547, 553 (1980). We conclude that the trial court correctly exercised its discretion when it determined that equitable estoppel was not available because the detriment resulted in part from the personal representative's decision to pay the taxes and distribute the estate in the face of a known controversy concerning the proper construction of the will.

## LACHES

The elements of the equitable doctrine of laches are (1) unreasonable delay, (2) knowledge of and acquiescence in the course of events and (3) prejudice to the party asserting laches. *Ozaukee County v. Flessas*, 140 Wis. 2d 122, 127, 409 N.W.2d 408, 410 (Ct. App. 1987). Although the issue of reasonableness presents a question of law that we ordinarily review independently of the trial court's determination, because the determination of reasonableness is so intertwined with the factual find-

477

ings supporting it, we defer to the trial court's conclusion. *See Id.* "The determination whether the delay was so unreasonable, inexcusable, and prejudicial to the [party asserting laches] as to bar the [non-asserting party's] remedies rested in the sound discretion of the trial judge." *Blue Ribbon Feed Co. v. Farmers Union Cent. Exch., Inc.,* 731 F.2d 415, 420 (7th Cir. 1984). We need not determine whether the deference standard identified in *Ozaukee County* or the erroneous exercise of discretion standard identified in *Blue Ribbon Feed* applies because we would reach the same result under either standard.

■ The Lohrs' laches claim fails for the same reasons that their estoppel claim fails. In light of the parties' continuing attempts to resolve the conflict from the time that Viney was made aware of the alleged error until the malpractice suit was filed, we cannot conclude, as a matter of law, that Viney's delay in filing the petition for construction of the will was unreasonable.

## WILL CONSTRUCTION

The portions of the will relevant to the dispute provide:

## ARTICLE FOUR

**A. Residue; Spouse Survives.** If my spouse survives me by THIRTY (30) Days, I give to my spouse outright, as a marital bequest, the share specified in Paragraph B of this Article Four.

### B. Marital Share.

1. The marital share shall be the greater of the following:

a. The minimum pecuniary amount which will qualify for the Federal estate tax marital deduction and which will result in the smallest Federal estate tax being payable by reason of my death. . . . or;

b. One-half of my adjusted gross estate less all other items included in my gross estate for Federal estate tax purposes, whether or not passing under this will, which qualify for said deduction. . . ..

**C. Disclaimer.** My spouse or my spouse's personal representative, by an instrument in writing delivered to my Personal Representative after my death, may disclaim all or any part of the distribution under paragraph A of this Article. Any part so disclaimed shall be held and administered as a separate trust in accordance with the terms of the Residual Trust (Article Five of this Will).

## ARTICLE FIVE

**A. Residual Trust.** In the event my spouse shall predecease me or shall not be living THIRTY (30) Days after the date of my death, I give the residue of my estate to my Trustee, in a trust to be known as the Residual Trust, to be held, administered and distributed upon the terms and conditions set forth in this Article Five. The Residual Trust shall be established during the lifetime of my spouse should property pass to it by disclaimer or outside this will.

**B. Spousal Income Interest.** If the Residual Trust is established during my spouse's lifetime, the Trustee, in the sole discretion of the Trustee, may pay the net income of the trust to or for the benefit of my spouse for my spouse's reasonable support, health, education and maintenance.

. . ..

**E. Distribution of Trust.** After the death of my spouse, or after a disclaimer by my spouse of any interest in the Residual Trust, the Trustee shall distribute the remaining principal of the trust, together with any accumulated, accrued, or undistributed income, to my children in equal shares, and to their descendents [sic] by right of representation if any of my children are [sic] then deceased.

. . ..

## ARTICLE SIX

If the final distribution of my estate or the assets of any trust created hereunder is not provided for in full, I give all such property one-half (½) to my heirs and one half (½) to my spouse's heirs, to be determined under the then-existing laws of the State of Wisconsin relating to the distribution of intestate property.

The purpose of will construction is to ascertain the testator's intent. *In re Estate of Ganser*, 79 Wis. 2d 180, 186, 255 N.W.2d 483, 486 (1977). Because the language of the will is the best evidence of the testator's intent, we look to it first; if there is no ambiguity or inconsistency in the will's provisions, there is no need for further inquiry into the testator's intent. *Id.* at 187, 255 N.W.2d at 486. However, if an ambiguity or inconsistency exists in the will's language, we look to the surrounding circumstances at the time of the will's execution. *Id.* If an ambiguity or inconsistency still persists, we may resort to the rules of will construction and extrinsic evidence. *Id.*

Ambiguity exists where the will's language is subject to two or more reasonable interpretations, either on its

face or as applied to the extrinsic facts to which it refers. *Id.* The Lohrs contend that the will is not ambiguous as it applies to the portion of the testator's estate that is not passed by the marital deduction in Article Four. They argue that in the event the spouse survives the testator for at least thirty days, Article Six, though poorly drafted, unambiguously provides for distribution of the other half of the testator's estate. We do not agree.

When determining whether an ambiguity or inconsistency exists in the will's language, we look at the will not as a group of independent phrases, but rather as an entire instrument. *See In re Estate of Farber*, 57 Wis. 2d 363, 370, 204 N.W.2d 478, 482 (1973). Thus, if one provision is inconsistent with another or renders another ambiguous, we may look to the surrounding circumstances. *Ganser*, 79 Wis. 2d at 187, 255 N.W.2d at 486. We conclude that the will, viewed as a whole, contains ambiguities and inconsistencies for several reasons.

The ambiguity in the will's language surrounds the creation of the residual trust in Article Five and the disposition of the portion of the estate that is not disposed of by Article Four. The first sentence in Article Five, paragraph A, provides that if the spouse is not living thirty days after the testator's death, the residue of the estate passes into a residual trust. The last sentence in that paragraph provides for creation of the trust during the spouse's lifetime " *should property pass to it by disclaimer or outside this will.*" (Emphasis added.) According to this paragraph, the residual trust's creation is conditioned upon any one of three contingencies: (1) the testator's spouse is not living thirty days after the testator's death; (2) the testator's spouse is living thirty days after the testator's death and disclaims any or all of the gifts passing to her under another portion of the will

or (3) property is passed to the trust outside of the will (for example, a life insurance policy lists the residual trust as the beneficiary).

Nothing in Article Five provides for the distribution of the portion of the testator's estate not passing to the spouse if the testator's spouse survives him. The residual trust could still be created and funded with disclaimed gifts or property passing to it outside the will, but nowhere is it provided that the residue of the estate passes into the trust if the spouse is living thirty days after the testator's death. Further, because the will does not provide for an outright distribution of the residue in the event the testator's spouse survives him, the portion of the estate that does not pass to the spouse is not distributed under the will.

A testator is presumed to have intended a complete distribution of the estate, and we should not interpret the instrument to leave property undisposed. *Farber,* 57 Wis. 2d at 369, 204 N.W.2d at 481. Viney argues that the language in the last sentence of Article Five, Paragraph A, when read with Article Five, Paragraphs B and E and Article Four, Paragraph C, indicates the testator's intent to create the residual trust during the surviving spouse's lifetime and that this interpretation conflicts with the clear language in the first sentence of Article Five, Paragraph A. The Lohrs contend that the residue is not left undisposed, but rather is disposed of in Article Six.

If we adopt, for the sake of discussion, the Lohrs' interpretation of Articles Five and Six, however, Article Six becomes ambiguous and conflicts with Article Five. First, Article Six provides that, under certain circumstances, the testator's property shall pass to "to my *heirs* and . . . to my spouse's *heirs,* to be determined under the then-existing laws of the state of Wisconsin

relating to the distribution of intestate property." (Emphasis added.)

The Lohrs contend that the language "my spouse's heirs" in Article Six provides for distribution to the testator's spouse's children, regardless of whether the spouse is deceased. However, the term "heir" is defined in sec. 851.09, Stats., as "any person . . . who is entitled under the statutes of intestate succession to an interest in property of a decedent. . . .." No one is entitled to a person's property under intestacy until the person is deceased, according to Wisconsin intestate law. Either interpretation of the term "heirs" as used in the will is reasonable; therefore, the Article is ambiguous regarding whether it applies only if the testator's spouse does not survive him by thirty days.

Second, Article Six provides that "[i]f the final distribution of my estate . . . is not provided for in full, I give *all* such property one-half (½) to my heirs and (½) to my spouse's heirs. . .." (Emphasis added.)[1] This provision might direct the distribution of the residue, or, because it refers to *all* property, it might direct the distribution of the *entire estate* to the children. Because either interpretation is reasonable, an ambiguity exists. Further, the latter interpretation, distributing the entire estate to the children and none to the spouse, is inconsistent with Article Four's provision of the marital deduction share of the estate to the testator's spouse if she survives him. Because the Lohrs' interpretation of Article Six's application would render it inconsistent with other provisions in the will, that interpretation

---

[1] The relevant portion of the provision is the contingency that the final distribution of the estate is not provided in full, because Article Five, Paragraph E (Distribution of Trust), provides for full distribution of the trust assets.

should be avoided. *See Farber*, 57 Wis. 2d at 370, 204 N.W.2d at 482.

Based upon our conclusions that several of the will's provisions are susceptible to more than one reasonable interpretation, that several provisions conflict with others and that the will appears to leave a portion of the testator's estate undisposed of, we conclude that the will's language is ambiguous. Therefore, we now look to the surrounding circumstances at the time of the execution. *Ganser*, 79 Wis. 2d at 187, 255 N.W.2d at 486.

When viewing the surrounding circumstances to aid in the interpretation of a will, the goal is to determine the reasonable meaning of the words used, from the testator's point of view. *In re Estate of Gehl*, 39 Wis. 2d 206, 211-13, 159 N.W.2d 72, 74-75 (1968). However, in this case, the interpretation problems cannot all be solved by resorting to surrounding circumstances. While it may be possible to conclude that in Article Six the testator intended the language "my spouse's heirs" to mean simply "my spouse's children," that would not resolve the question whether Article Six applies only if the testator's spouse does not survive him or if it applies if she is living thirty days after the testator's death. Further, the other conflicts and ambiguities in the will's language remain unresolved. Additionally, the record contains no evidence and neither party develops an argument concerning how the circumstances surrounding the execution could shed light on the ambiguities identified.

If, after examining the surrounding circumstances at the time of the will's execution an ambiguity or inconsistency persists, we may resort to extrinsic evidence and the rules of will construction. *Ganser*, 79 Wis. 2d at 187,

255 N.W.2d at 486. Because the testator is presumed to know the law, existing statutory law is an extrinsic aid that may be consulted. *In re Estate of McDonald*, 20 Wis. 2d 63, 67, 121 N.W.2d 245, 248 (1963). The drafting attorney's testimony concerning the statements the testator made to her also is admissible as extrinsic evidence of the testator's intent. *In re Estate of Mangel*, 51 Wis. 2d 55, 69, 186 N.W.2d 276, 283 (1971).

Although the trial court did not hold a hearing on the will construction, Viney's affidavit that appears in the record contains information about the testator's intent and the parties agree as to what the testator intended at the time the will was executed. Viney's affidavit indicates that the testator intended to utilize tax-avoidance estate planning techniques to dispose of his large estate by

> making use of the unlimited Federal marital deduction from estate and gift taxation and . . . taking full advantage of the Federal unified estate and gift tax credit. . . .. In conformity with the wishes and intentions of [the testator], I drafted a Last Will and Testament which provided for both a marital bequest as mentioned above and a residual trust for the remainder.

The Lohrs do not dispute that this was the testator's intent. The Lohrs argue, however, that the trial court was without authority to change or add words to the will designed to carry out this intent.

Based on the evidence, the trial court construed the first sentence of Article Five, Paragraph A, to provide that the residue shall pass into the residual trust "[i]n the event my spouse shall not predecease me and shall be living THIRTY (30) Days after the date of my death" instead of "[i]n the event my spouse shall predecease me

485

or shall not be living THIRTY (30) Days after the date of my death."

The Lohrs correctly assert that a court is prohibited from rewriting or distorting the construction of an unambiguous will, even if the will fails to dispose of property consistent with the testator's intent, except in limited circumstances. *See In re Estate of Gray*, 265 Wis. 217, 221-22, 61 N.W.2d 467, 469 (1953); *In re Estate of Gibbs*, 14 Wis. 2d 490, 497-99, 111 N.W.2d 413, 418 (1961). However, these cases apply to wills that are unambiguous when examined in light of extrinsic circumstances. Courts are bound by the will's language " *unless its terms present an ambiguity.*" *In re Estate of Breese*, 7 Wis. 2d 422, 429, 96 N.W.2d 712, 717 (1959) (citation omitted) (emphasis added). Here, the will is ambiguous in many respects, and resort to extrinsic facts fails to cure the ambiguities. If the will's language is strictly applied, the drafting error results in both ambiguities and inconsistencies in the will's language and an incomplete disposition of property.

"The paramount object of will construction is the ascertainment of the [testator's] intent." *Ganser*, 79 Wis. 2d at 186, 255 N.W.2d at 486. The interpretation of provisions that are ambiguous or inconsistent with other provisions should be consistent with the testator's intent, without regard to the ambiguous language. *See In re Blackbourn's Estate*, 260 Wis. 25, 29, 49 N.W.2d 755, 757 (1951).

The trial court, in its construction, reconciled inconsistent provisions with other provisions in the will according to the testator's ultimate purpose in making the will. This the trial court may and should do.

486

*Blackbourn's Estate*, 260 Wis. 2d at 29, 49 N.W.2d at 758. The trial court's construction removes the conflict between the first sentence of Article Five, Paragraph A, and other provisions of the will providing for the creation of the residual trust during the testator's spouse's lifetime and cures the failure to dispose of the portion of the estate not passing to the surviving spouse. It also cures the inconsistency and ambiguity in Article Six, in that Article Six applies in the event the testator's spouse is not living the thirtieth day following his death. Neither party disputes that the court's construction reflects the testator's intent. Therefore, we conclude that the trial court properly construed the will.

*By the Court.*—Order affirmed.