KLOPPENBURG, J.
¶1 Mickey Owen appeals the circuit court's judgment determining that Mickey is not a beneficiary of the Patsy L. Kozlowski Survivor's Trust.[1] He argues that, read in light of the surrounding circumstances, a Will executed by Patsy Kozlowski amended the Trust to include Mickey as a beneficiary. In the alternative, he argues that extrinsic evidence shows that Patsy intended to include Mickey as a beneficiary of the Trust.
¶2 We conclude that the Will, read in light of the surrounding circumstances, is ambiguous because it is unclear as to what benefits Patsy intended Mickey to receive under the Will. We also conclude that the circuit court's determination that Patsy did not intend to use the Will to include Mickey as a beneficiary of the Trust is not against the great weight and clear preponderance of the extrinsic evidence presented at trial. Accordingly, we affirm.
BACKGROUND
¶3 The following facts are not disputed. Patsy and Cornelius Kozlowski were spouses and had six children: Michael, Susan, Kenneth, Karen, Deborah, and Gerald. Deborah married Mickey Owen, and together they have a child, Eric Owen. Deborah and Mickey were divorced in 1987.
¶4 In 2008, Cornelius and Patsy established the Cornelius G. Kozlowski and Patsy L. Kozlowski Revocable Trust and the Patsy L. Kozlowski Survivor's Trust (the Trust). In 2013, Cornelius died, and the assets of the Revocable Trust passed into the Trust. Patsy was the sole trustee of the Trust during her lifetime and retained the power to amend or revoke the Trust.
¶5 The Trust as drafted in 2008 provided that, upon Patsy's death, its assets would be distributed in equal shares to Susan, Michael, Kenneth, Karen, and Deborah. Patsy amended the Trust in 2014 by removing a bank as a successor trustee, and again in 2015 by crossing out Deborah's name from the list of beneficiaries who would receive a distribution from the Trust upon Patsy's death.
¶6 Shortly after making the 2015 amendment to the Trust, Patsy met with attorney Barbara McPherson to draft her Will. Patsy signed the final version of the Will on March 7, 2015. Article Two of the Will contains the following language:
TANGIBLE PERSONAL AND REAL PROPERTY
1. I instruct my personal representative to sell all my tangible personal and real property for purposes of division to my beneficiaries of the Survivor Trust as amended in 2014 and 2015 which excludes Deborah and includes Mickey Owen. All my children included as beneficiarys [sic] of the Trust shall have the right of first refusal to purchase any property not specifically bequeathed to others prior to the estate sale.
¶7 Patsy died in a farm fire in April 2015. After Patsy's death, Michael became the sole trustee of the Trust.[2] The Trustee brought a petition in circuit court to determine the beneficiaries of the Trust. The Trustee asked that the court order that, in light of the 2015 amendment to the Trust and the language in the Will, neither Deborah, Mickey, nor any of their issue are beneficiaries of the Trust. Mickey and Eric objected to the Trustee's petition and moved for summary judgment, arguing both that Article Two of the Will amended the Trust to include Mickey as a beneficiary, and that certain "surrounding circumstances" showed that Patsy had intended to use the Will to include Mickey as a Trust beneficiary.
¶8 The circuit court rejected these arguments and denied the motion for summary judgment. The court then held a bench trial to determine the beneficiaries of the Trust. In a well-reasoned decision issued after the trial, the court determined that the language of the Will, read in light of surrounding circumstances, is ambiguous because it is unclear as to whether Mickey is a Trust beneficiary. The court then considered extrinsic evidence presented at trial and concluded that Patsy did not intend Mickey to be a Trust beneficiary, although she did intend that Mickey receive some specific personal property from her estate. Accordingly, the court entered a judgment declaring that Mickey is not a beneficiary of the Trust. This appeal follows.
DISCUSSION
¶9 Mickey argues on appeal that the Will amended the Trust to include Mickey as a Trust beneficiary, as shown by the language of the Will itself, or alternatively, by the extrinsic evidence of Patsy's intent.[3]
¶10 The construction of a testamentary document presents a question of law that we review de novo. In re Estate of Furmanski , 196 Wis. 2d 210, 214, 538 N.W.2d 566 (Ct. App. 1995). "The purpose of will construction is to ascertain the testator's intent. Because the language of the will is the best evidence of the testator's intent, we look to it first." In re Estate of Lohr , 174 Wis. 2d 468, 480, 497 N.W.2d 730 (Ct. App. 1993). "[A] will is to be construed to ascertain the intent of the testator; the intent of the testator is to be determined from the words of the will and the surrounding circumstances at the time of its execution." In re Mangel's Estate , 51 Wis. 2d 55, 64, 186 N.W.2d 276 (1971) ; see also Furmanski , 196 Wis. 2d at 215 (the testator's intent "[i]s determined from the language of the document itself, considered in light of the circumstances surrounding the testator" at the time the will was executed). "[U]nlike a contract, a will is a unilateral transaction consisting of words whose meaning is to be ascertained subjectively. The question is not what the usual usage of a word may be or the dictionary usage, but the testator's individual meaning." Mangel , 51 Wis. 2d at 65.
¶11 Where the words of a Will, read in light of surrounding circumstances at the time of the Will's execution, are ambiguous or inconsistent, a court may resort to extrinsic evidence to ascertain the testator's intent. Lohr , 174 Wis. 2d at 480. Extrinsic evidence of the testator's intent includes testimony concerning what the testator expressed to others. See id. at 485 (extrinsic evidence includes testimony by the testator's attorney "concerning the statements the testator made to" the attorney).
¶12 Where, as here, conflicting extrinsic evidence has been presented to and weighed by the circuit court, the court's finding as to the testator's intent is a finding of fact. See In re Estate of Trotalli , 123 Wis. 2d 340, 350, 366 N.W.2d 879 (1985) ("a testator's intent [is] a question of fact"); In re Mattes' Will , 268 Wis. 447, 451, 68 N.W.2d 18 (1955) (question whether testator intended to omit son from his will was a question of fact); In re Mechler's Will , 246 Wis. 45, 54, 16 N.W.2d 373 (1944) ("The [circuit] court in determining the precise meaning intended by the testator in using a particular expression deals with [a] matter of fact to be solved from evidentiary inferences ...." (quoted source omitted) ).
¶13 Thus, we will affirm the circuit court's finding as to the testator's intent unless it is clearly erroneous and against the great weight and clear preponderance of the evidence. See In re Evans' Estate , 83 Wis. 2d 259, 271, 265 N.W.2d 529 (1978). This standard is "heavily weighted on the side of sustaining [circuit] court findings of fact in cases tried without a jury." In re Jones' Estate , 74 Wis. 2d 607, 610-11, 247 N.W.2d 168 (1976). "The question ... is not whether this court would reach the same findings, but whether the findings should be affirmed as not being contrary to the great weight and clear preponderance of the evidence." Evans , 83 Wis. 2d at 271. Moreover, we examine the record, "not for evidence to support findings which the [circuit] court did not make, but for facts to support the findings which the [circuit] court did make." Id .
¶14 In the sections that follow, we first explain our conclusion that the language of the Will, read in light of surrounding circumstances, is ambiguous because it does not make clear what benefits Patsy intended Mickey to receive. We then explain our conclusion that the circuit court's determination that Patsy did not intend the Will to include Mickey as a beneficiary of the Trust is not against the great weight and clear preponderance of the extrinsic evidence presented at trial.
I. The Language of the Will
¶15 We start with the following pertinent provisions of Patsy's Will, which clearly describe Deborah's intended Trust beneficiary status but do not clearly describe Mickey's intended beneficiary status:
ARTICLE ONE[:] INTRODUCTORY PROVISIONS
....
1.2 Identification of Children: Susan, Michael, Deborah, Jerald, Kenneth and Karen. For purposes of this Will and Survivor Trust, Deborah is no longer a child or beneficiary of this Will and Survivor Trust, having received all her inheritance in prior years and having been disowned by me ....
ARTICLE TWO[:] TANGIBLE PERSONAL AND REAL PROPERTY
1. I instruct my personal representative to sell all my tangible personal and real property for purposes of division to my beneficiaries of the Survivor Trust as amended in 2014 and 2015 which excludes Deborah and includes Mickey Owen. All my children included as beneficiarys [sic] of the Trust shall have the right of first refusal to purchase any property not specifically bequeathed to others prior to the estate sale.
ARTICLE FOUR[:] RESIDUE
The Residue of my estate shall be added to, held administered, and distributed as part of the Survivor's Trust according to the terms of that trust and any amendment made to it before my death specifically excluding Deborah as a beneficiary in any form from any and all benefits and gifts of this Will and the Survivor Trust.
¶16 The only language in the Will that mentions Mickey is in Article Two, which refers to "my beneficiaries of the Survivor Trust as amended in 2014 and 2015 which excludes Deborah and includes Mickey Owen." The parties agree that this language must be read together with the contents of the Trust and the 2014 and 2015 amendments to the Trust to ascertain what Patsy intended when she wrote her Will.
¶17 Reading Article Two in isolation, the phrase, "beneficiaries of the Survivor Trust as amended in 2014 and 2015 which excludes Deborah and includes Mickey Owen" suggests that the Trust as amended named Mickey as a beneficiary of the Trust. However, the Trust as amended did not name Mickey as a beneficiary. Neither the Trust as originally drafted nor the 2014 and 2015 Amendments made any reference to Mickey at all. Because Mickey is not a beneficiary of the Trust as amended, the language of the Will is not clear as to what benefits Patsy intended Mickey to receive under the Will. That is, there remains the puzzle of what the phrase "includes Mickey Owen" means.
¶18 Mickey's two arguments to the contrary are unavailing. First, Mickey argues that Article Two of the Will must be read to amend the Trust to include him as a beneficiary because, as he puts it, it is "conceded" that the Will modified the Trust to exclude Deborah as a Trust beneficiary, and, therefore, Article Two's plain language supports only the conclusion that he is included as a Trust beneficiary. This argument fails because its premise is wrong: it was not the Will that modified the Trust but rather the 2015 amendment to the Trust that modified the Trust to exclude Deborah. Moreover, the fact that Articles One and Four of the Will both reference the Trust and state that Deborah is not a beneficiary, but do not mention Mickey in association with the Trust, supports the conclusion that Article Two did not amend the Trust to include Mickey. See Staaben v. Jabs , 57 Wis. 2d 363, 370, 204 N.W.2d 478 (1973) (we view the will as an entire instrument with its various provisions to be read not in isolation but "so as to be consistent with one another"). Further, as explained above, the plain language of Article Two is inconsistent with the contents of the amended Trust and so does not establish what benefits Patsy intended Mickey to receive under the Will. Thus, there is no language in the Will that makes Mickey a beneficiary of the Trust, and the puzzle of what benefits Patsy intended Mickey to receive by using the phrase "including Mickey" remains.
¶19 Second, Mickey argues that the directive in case law to consider the Will's language in light of surrounding circumstances requires that we consider evidence that he had a "very close relationship with Patsy," such that she would naturally have included him as a Trust beneficiary. Mickey points to evidence of the time he spent at Patsy's house, at family functions, and at Patsy's funeral, as indicating that he "maintained a very close relationship with Patsy." Mickey also points to evidence of Patsy's previous estate planning documents, which he asserts had contemplated replacing Deborah with either Mickey or Eric as a beneficiary of the Trust. However, as the circuit court noted, this evidence at most shows that Patsy might have intended to include Mickey as a Trust beneficiary, but it is not sufficient to resolve the puzzle of what benefits Patsy did intend Mickey to receive by using the phrase "including Mickey" in the Will.
¶20 In sum, because the language of the Will does not clearly express Patsy's intent concerning the benefits Mickey is to receive, we must resort to extrinsic evidence of her intent.
II. Extrinsic Evidence
¶21 To repeat, the circuit court found that Patsy did not intend to use the language in the Will to include Mickey as a beneficiary of the Trust. As we explain, Mickey fails to show that this finding is against the great weight and clear preponderance of the evidence presented at trial.
¶22 The circuit court received exhibits and heard testimony relating to the relationship between Patsy and the potential beneficiaries of the Trust. The court also heard testimony related to Patsy's history of estate planning and to her expressed intentions when drafting her final will. In particular, the court heard testimony from attorney L. William Kahler, who had drafted the original trust document in 2008; attorney McPherson; Michael; Kenneth; Susan; Mickey; Gerald; Karen; Jeff Brott (Susan's husband); and Michael Buell (a family friend).
¶23 The evidence presented includes the following. Attorney McPherson testified that over the course of several estate planning meetings with Patsy in early 2015, Patsy never suggested that she wanted or intended to make Mickey a beneficiary of the Trust. Attorney McPherson's notes of her meetings with Patsy indicate that Patsy was specifically debating whether the Trust beneficiaries should include Michael, Kenneth, Susan, Karen, and Gerald, or just the first four of those five if she was unable to reconcile with Gerald.[4] Attorney McPherson testified that, upon being warned that the language of the Will might be ambiguous, Patsy stated that Michael knew what she wanted done with her property.[5] Michael testified that Patsy did not intend Mickey to be an equal beneficiary of the Trust with her children, but did contemplate returning to Mickey some personal property that Mickey had previously loaned or given to her. Michael also testified that Patsy had considered whether the fact that Mickey had been hunting on her land for years was enough of a gift that he did not need to be included in her estate, and that Patsy had considered but ultimately rejected the idea of leaving Mickey a portion of an individual retirement account. Attorney McPherson testified that, when Patsy signed the Will, Patsy had not decided what Mickey would receive, but that she did not intend him to be a full beneficiary of the Trust, and that she was considering returning to Mickey some personal property that he had given her. Kenneth testified that Patsy had told him in 2013 that Mickey was "not in the Trust."
¶24 Although he does not frame his arguments this way, we understand Mickey to make four arguments why it was nevertheless against the great weight and clear preponderance of the evidence for the circuit court to find, based on the evidence summarized above, that Patsy did not intend the Will to make Mickey a beneficiary of the Trust. As we explain, none of Mickey's four arguments is persuasive.[6]
¶25 First, Mickey attacks the weight and credibility of the testimony of attorney McPherson, Michael, and Kenneth, arguing that: (1) the testimony contains some inconsistencies; (2) the testimony is "speculation and conjecture" because it describes Patsy's intent at times prior to March 6, 2015, when the current version of Article Two was drafted, and does not describe Patsy's intent specifically on that date; and (3) attorney McPherson's notes are irrelevant, because they do not cover the meeting of March 6, 2015, in which the final version of Article Two was drafted.[7] However, we defer to the circuit court's weight and credibility determinations. See State v. Carnemolla , 229 Wis. 2d 648, 661, 600 N.W.2d 236 (Ct. App. 1999) (we defer to the circuit court's credibility determinations because it is in the best position to evaluate a witness's credibility); Lessor v. Wangelin , 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998) ("When the [circuit] court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and of the weight to be given to each witness's testimony."). Here, the court explicitly found attorney McPherson's testimony credible and also relied on her notes and testimony given by Michael. And, Mickey does not explain why the circuit court could not ascertain what Patsy's intent was on the day she drafted the disputed language by considering evidence of her words and actions at other times.
¶26 Second, Mickey repeats his argument that because Mickey was close to Patsy and because Patsy's previous estate planning documents (dating from around 2001) had contemplated making Eric or Mickey a beneficiary of her estate, Patsy would naturally have intended to make Mickey a beneficiary of the Trust. However, neither evidence of Patsy's relationship with Mickey nor evidence of decades-old estate planning outweighs the evidence of the clear expressions of Patsy's intent that Mickey is not to be a beneficiary of the Trust.
¶27 Third, Mickey points out that Susan testified that Patsy told her that Mickey was included in the Will. The Will does indeed mention Mickey, but Mickey points to nothing in Susan's testimony showing that Patsy intended Mickey to be included as a beneficiary of the Trust . Rather, because Susan did not testify that Patsy intended to make Mickey a beneficiary of the Trust, her testimony is consistent with the circuit court's interpretation of the Will.
¶28 Fourth, Mickey points out that Patsy specifically rejected attorney McPherson's proposed language that would have made clear her bequest of personal property to Mickey. But, attorney McPherson also testified that Patsy planned to revisit the language in the Will shortly after executing the Will on March 7, once she had decided what property Mickey should receive. The fact that Patsy refused to amend the language in Article Two on March 6 is therefore not especially indicative of her intent with regards to Mickey, since she expressed an intention to possibly change the language at a later date.
¶29 In sum, we conclude that Mickey fails to show that it was against the great weight and clear preponderance of the evidence for the circuit court to find that Patsy did not intend her Will to include Mickey as a beneficiary of the Trust.
CONCLUSION
¶30 For the reasons stated above, the judgment of the circuit court is affirmed.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

The circuit court also determined that Mickey's son Eric Owen, who is also an appellant, is not a beneficiary of the Trust. While briefing on behalf of Mickey and Eric includes references that may be intended to suggest that Eric is a beneficiary, the only clear request is that we reverse the court's determination that Mickey is not a beneficiary. Accordingly, we refer solely to Mickey's arguments that he is a beneficiary when describing the appellants' arguments.
Because several of the pertinent persons share last names or have had several different last names, we will refer to each by his or her first name only.

We will refer to Michael by name when discussing actions taken in his individual capacity, and we will refer to "the Trustee" when describing actions that he took in that capacity.

Throughout his briefing, Mickey provides citations to the record that consist solely of document numbers, without identifying the particular page or location where the pertinent material can be found within an identified record item. This violates an important appellate rule and creates unnecessary work for opposing counsel and the court. See Wis. Stat. § 809.19(d) (statement of facts must contain "appropriate references to the record " (emphasis added) ). This failure is especially problematic where, for example, the citation is to a transcript over 500 pages long. "[T]he Court of Appeals of Wisconsin is a fast-paced, high-volume court..." State v. Pettit , 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) ; it is not an efficient use of the court's time to have to find the citations that parties should provide. We warn counsel that future failures to provide the required, precise record citations may result in adverse outcomes. State v. McMorris , 2007 WI App 231, ¶ 30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals may "choose not to consider ... arguments that lack proper citations to the record").

Specifically, the notes contain the following language: "Trust: if Jerry goes well 5 ways even." Attorney McPherson testified that the notes referred to an upcoming meeting between Patsy and Gerald, at which Patsy hoped to resolve some ongoing business disputes, and that Patsy intended to include Gerald as a Trust beneficiary if that meeting went well. She also testified that the "five" were Gerald, Michael, Kenneth, Susan, and Karen.

Karen also testified that Patsy had stated that Michael knew how Patsy wanted her property treated.

Mickey also restates his argument concerning the plain language of the Will, arguing that the language itself is the best evidence of Patsy's intent. But, we have explained why that language is ambiguous, and this argument is therefore unavailing. See Lohr , 174 Wis. 2d at 486 ("Courts are bound by the will's language 'unless its terms present an ambiguity .' " (quoted source omitted) (alteration in original) ).

Mickey also misleadingly points to attorney McPherson's testimony that she did not know why Patsy included in the Will the language referencing Mickey, suggesting that this testimony undermines McPherson's other testimony about what Patsy intended as to Mickey. However, our review of McPherson's testimony reveals that McPherson was plainly referring only to not knowing what "specific property" Patsy intended to return to Mickey, not to whether Patsy intended to make Mickey a beneficiary of the Trust.