IN RE BRADLEY'S WILL.

*October 20—November 15, 1904.*

*Wills: Construction: "Residue": Lapsed legacies: Distribution.*

1. A testator devised certain of his estate to his wife, and, after certain annuities, all the "residue" to his wife, two brothers and an adopted son, share and share alike, to each an undivided one-fourth share thereof. He further provided that in case his adopted son should not attain twenty-one years his share should be equally divided between the wife and two brothers. The annuitants and the wife predeceased the tes-

tator, who afterwards remarried, the second wife surviving·
him. *Held*, that it could not be said that the testator used
the word "residue" in his will in other than its usual and
legal meaning, from which is excluded the dominant widow's·
right, and that the residue was properly ascertained by deduct-
ing from the general estate the debts and the amount neces-
sary to satisfy the widow.

2. In such case, the lower court properly distributed such "resi--
due," one-fourth each to the brothers and adopted son as lega-
. cies under the will. The remaining fourth, by lapse of the
bequest thereof to the first wife, became intestate property and
was properly assigned to the adopted son under the laws of
descent.

APPEAL from a judgment of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Af-
firmed.*

In 1879 William H. Bradley made his will, whereby he·
devised and bequeathed to his wife, Emma Bradley, the home-
stead, its furnishings, etc., and to three aunts annuities of
$100 each, and as to all the "residue" provided:

"I give, bequeath and devise (the same) to my said wife,
Emma H. Bradley, and my said brothers, *Edward Bradley*
and *James W. Bradley,* and to my adopted son, *William Tur-
ner Bradley,* share and share alike, so that each of them shall
be entitled to an undivided one-fourth share thereof."

He further provided that in the case of the death of the·
adopted son before attaining the age of twenty-one years his
share should be equally divided between the wife and the two·
brothers, so that they should each receive one third of the re-
maining portion of said estate. The three annuitants, as also·
the wife, Emma Bradley, predeceased the testator. On the·
5th day of January, 1903, he married another wife, and died
on the 7th day of January, 1903. The share of the estate to
which the widow was entitled by law, being one third, of
course exceeded the one fourth of the. residue which would
have gone to Emma Bradley under the will had she survived
the testator. The county court, upon petition for distribu-
tion, adjudged that the expenses, debt, legacies, and legal.

share of the widow should be paid generally out of the estate; that the remainder, after such payments, constituted the residue, and that of such residue one fourth should be distributed to each of the appellants, *Edward Bradley* and *James W. Bradley,* and one fourth to *William Turner Bradley* as legatee; that the remaining one fourth, by lapse of the bequest thereof to Emma Bradley, became intestate estate, and passed by descent to *William Turner Bradley,* whereby the latter became entitled to one half of the residue. From this judgment an appeal was taken to the circuit court, where it was affirmed, and the two brothers now appeal to this court from such affirmance.

For the appellants there was a brief by *Van Dyke & Van Dyke & Carter,* and oral argument by *G. D. Van Dyke.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* and *Charles Quarles,* of counsel, and oral argument by *Charles Quarles.*

DODGE, J. By his will the testator bequeathed to each of the appellants one fourth of the residue of his estate. Residue is variously defined as "that which remains after discharging all legal and testamentary claims on the estate." *Eyre v. Marsden,* 4 Mylne & C. 231, 243. "That which is left after the payment of charges, debts and particular legacies." *Phelps v. Robbins,* 40 Conn. 250, 264. "That which remains after all paramount claims upon the testator's estate are satisfied." *Tomlinson v. Bury,* 145 Mass. 346, 14 N. E. 137. "All, of which no effectual disposition is made by will other than [by] the residuary clause." *Skrymsher v. Northcote,* 1 Swanst. 570; *Morton v. Woodbury,* 153 N. Y. 257, 47 N. E. 283. "All property subject to be bequeathed by her not otherwise effectually disposed of." *Harrington v. Pier,* 105 Wis. 485, 499, 82 N. W. 345. While, of course, the word may be used in a different sense, as to describe the remainder of a fund or indeed of the whole estate after deducting merely

some particular charges or bequests, the presumption is very strong that it is used in the general sense above defined, unless the contrary clearly appears from the context. *Phelps v. Robbins, supra; Harrington v. Pier, supra.* It is agreed by counsel that the statutory provision for a widow not named in the will, under sec. 2172, Stats. 1898, is one of those "charges" or paramount claims, which, like a debt, must be deducted before the residue is ascertained; that it is not a part of the "property subject to be bequeathed," so that, under *Harrington v. Pier,* it might be included in the residue. *Ford v. Ford,* 88 Wis. 122, 59 N. W. 464; *Gallagher's Appeal,* 87 Pa. St. 200. From the foregoing premises the conclusion is syllogistic that the residue of William H. Bradley's estate was that, and only that, which remained after satisfying the widow's paramount claims thereon. Of that residue one fourth is, by the assailed decree, awarded to each of the appellants, which, upon the surface, would seem to fully satisfy their right.

Against this conclusion appellants' contention is that we must construe this will as giving to each of the residuary legatees one fourth of the entire estate after payment merely of debts and expenses, and that, there being one fourth of that estate intestate by lapse of the legacy to Emma Bradley, such undisposed-of portion should be first applied in satisfaction *pro tanto* of the widow's third before any deduction should be made from the persisting legacies of one fourth each to the son and two brothers. Many authorities are cited in favor of the general rule that any undisposed-of portion of the estate should first be exhausted in discharging debts and expenses before any deductions are made from legacies for that purpose. Argument is also made in favor of a scheme of so-called "marshaling the assets" so as to reimburse to legatees out of any intestate property any abatement which their respective legacies suffer by reason of existence of general burdens or charges upon the estate. These are but different

phases of application of the well-recognized doctrine that due regard for a testator's wish and intent requires that particular gifts made by him should be accorded full effect, if possible, and that any property not expressly disposed of he probably would desire should be used to render completely effective the dispositions actually declared. In appellants' contention for the application of such doctrine here, however, there lurks obvious fallacy. Their argument proceeds on the assumption that by the will something is expressly given to each of them which suffers abatement or diminution if the widow's share be satisfied out of the general estate. To reach that view they necessarily treat the will as if it gave to each of them one-fourth of the net estate—i. e., the entire estate above debts and expenses—so that, if they receive anything less, the gift to them suffers abatement. The net estate is, however, clearly distinguished from residue. *Ford v. Ford,* 88 Wis. 132, 59 N. W. 464; *Harrington v. Pier,* 105 Wis. 498, 82 N. W. 345. By this will they are given each one-fourth of the residue, and not of the net estate. Amongst a multitude of decided cases, both English and American, no such marshaling or application of other funds in exoneration, as contended for here, in favor of residuary bequests, finds support, except from *Kirk-patrick v. Rogers,* 42 N. C. (7 Ired. Eq.) 44, followed in the same court by *Swann v. Swann,* 58 N. C. (5 Jones, Eq.) 297, and *Miller v. London,* 60 N. C. (1 Winston, Law & Eq.) 628. The contrary view is sustained by *Eyre v. Mars-den,* 4 Mylne & C. 231; *Shuttleworth v. Howarth,* 1 Craig & P. 228; *Trethewy v. Helyar,* 4 Ch. Div. 53; *Fenton v. Wills,* 7 Ch. Div. 33; *Blann v. Bell,* 7 Ch. Div. 382; *Jones v. Caless,* 10 Ch. Div. 40; *Briggs v. Hosford,* 22 Pick. 288. The reasoning of these English cases is to the effect that by the use of the term residue a testator charges upon the general estate all debts, legacies, and other burdens; that no residue exists until such burdens have been paid. In this view it is a solecism to speak of discharging a debt or other charge

out of the residue, or by application of any particular share
of the residue.   Before the residue exists for assignment or
apportionment, all debts and burdens have necessarily and by
very force of the terminology been paid, and do not exist.
Hence in every case except those cited from North Carolina,
where lapse occurred in a share of a pure residuum, courts
have refused to treat that share differently from those of the
other residuary legatees.  MALINS, V. C., who in *Scott v. Cum-
berland,* L. R. 18 Eq. 578, and *Gowan v. Broughton,* L. R. 19
Eq. 77, was thought to have questioned the authority of *Eyre
v. Marsden,* 4 Mylne & C. 231, subscribes fully to the rea-
soning above stated, and in *Jones v. Caless, supra,* distin-
guishes his two former decisions, for that no charge of debts
and expenses on the general estate was made by the will either
by use of the term "residue" or otherwise.  Appellants seem
to concede full force to this reasoning so far as debts are con-
cerned, for no question is raised upon the court's action in
causing those to be paid out of the general estate.  No at-
tempt is made, however, to show why the charge for the
widow's share is in any wise distinguishable from debts in
this respect, except, perhaps, by a reference to *Ford v. Ford,
supra,* where it was held that the renouncing widow's share
should be considered part of the "net estate," while the debts
should not.  The distinction, however, between net estate and
residue has already been indicated, and the result of that dis-
tinction is, obviously, to exclude from the latter term a
widow's legal share as completely as debts or expenses.   The
North Carolina cases undoubtedly reject, without discussing it
or noticing the cases, the reasoning of the above-cited English
authorities, and hold, though the lapse was of a share of the
residue, that there should first be found a fund resulting from
deduction of all specific legacies, but not of the debts and ex-
penses; that this fund should be divided between the three
residuary bequests; and that the one third pertaining to the
bequest which lapsed, being intestate estate, should be applied

to payment of debts and expenses to the relief, complete or partial, of the other two shares of the so-called residue. Just why any general money legacies should not have been paid out of that lapsed share as well is not stated. We cannot subscribe to the view of those decisions. It seems to us to pervert the meaning of the term residue, and under the guise of exoneration, to really indulge in augmentation of the other residuary legacies above what the words of the will conferred. By the payment of such burdens out of the general estate the residuary legacies are not abated. True, the residue is lessened, but it is only the residue, whatever it may be, which is by the will given to these legatees.

Argument is advanced to support intention of testator to give one fourth of the net estate generally to each of the appellants, because otherwise is enhanced the share of the son to whom, in express words, is given only one fourth. We cannot think this purpose sufficiently plain to overcome the presumption that testator used the word residue in its proper sense. The adopted son was the natural object of his bounty in preference to the brothers. The possible death of the wife before himself must have been in contemplation of testator, for he considered and provided for the less probable contingency of the son's death. We deem much stronger an inference in favor of a knowledge and purpose that the son's share might be enhanced by the death of his mother before her husband, as it in all probability would be, by inheritance from her, in case of her death after she had received her share of the testator's property.

Appellants suggest as a further reason why this widow's share should not be treated as one of those burdens to be satisfied before the residue is ascertained, that it could not have been in contemplation of the testator when he framed his will. We fail to discover the force of that suggestion. The very use of a residuary phrase indicates uncertainty as to what will remain of an estate, otherwise specific amounts

would naturally be bequeathed. Necessarily what the residue may be cannot be known to the maker of any but a deathbed will, for his pecuniary condition may change at any time. William H. Bradley might have signed a bond for $17,000 two days before his death, and the effect on the residue of his estate might have been the same as this marriage, and equally outside of his anticipation at the time of executing the will. We presume appellants would not have resisted inclusion in the residue of a sudden increase of testator's fortune after the making of the will, although it might have been unexpected, but there would be the same reason for assuming an intent of testator to exclude it as that now advanced with reference to this unexpected burden.

To conclude, however, none of the considerations urged by appellants are sufficient to convince us that the testator used the word "residue" in this will in other than its usual and legal meaning, from which is excluded this dominant widow's right, that the residue has been properly ascertained by deducting from the general estate the debts and the amount necessary to satisfy the widow, and that the one fourth of that residue distributed to each of the appellants is all that the will gives them according to its terms.

*By the Court.*—Judgment affirmed.