IN RE the ESTATE OF Donald E. SHEPHERD:

Ramona CZAPLEWSKI, Appellant,

v.

Daniel E. SHEPHERD as Personal Representative of the Estate of Donald Shepherd, Respondent,

Steven E. SHEPHERD, Rebecca Kayser and Kelly Wuttke, Interested Persons.†

Court of Appeals

No. 2011AP2521. Submitted on briefs May 22, 2012.
—Decided September 12, 2012.

2012 WI App 116

(Also reported in 823 N.W.2d 523.)

† Petition for Review dismissed 10-17-12.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Daniel P. Fay* and *Erin K. Fay* of *Oakton Avenue Law Offices, S.C.*, Pewaukee and *Thomas D. Georgeson*, Oconomowoc.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Donal M. Demet* of *Demet & Demet, LLC*, Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. NEUBAUER, P.J. Ramona Czaplewski appeals from a trial court order admitting the will of her father, Donald Shepherd, to probate. Due to an attorney drafting error, the will did not contain a specific reference to the power of appointment as required under the Marital Property Agreement (MPA) executed by Donald and his predeceased wife, Lulu Mae Shepherd. Ramona contends that without the reference to the power of appointment, the will is nonbinding and the estate should be distributed according to the MPA. Ramona also contends that the sole witness in the case, the attorney who drafted the will and the MPA, should have been barred from testifying. We reject Ramona's challenges. We conclude that the trial court properly admitted the drafting attorney's testimony as permissible extrinsic evidence of testator intent. We further conclude that the trial court did not err in admitting Donald's 2010 will to probate. We affirm.

## BACKGROUND

*Overview*

¶ 2. Donald and Lulu Mae Shepherd were married on January 7, 1947. They had three children: Daniel, Steven, and Ramona. Ramona subsequently had two daughters, Rebecca Kayser and Kelly Wuttke. In 2002, Donald and Lulu Mae entered into the MPA, one provision of which governed the disposal of their property at death—to be divided equally between their three children. The MPA permitted the revision of the property distribution, provided any subsequent instrument made specific reference to the power of appointment[1] in the MPA.

---

[1] "A power of appointment is a power created or reserved by a person having property subject to his or her disposition which enables the donee of the power to designate, within such limits

444

¶ 3. Lulu Mae died in January 2005. In 2007, Donald properly exercised his powers under the MPA to execute a will (the 2007 Will) altering the property distribution in the MPA by dividing Ramona's one-third of the property equally between Ramona and her two daughters. In March 2010, Donald executed a codicil to the 2007 Will changing the personal representative from his son Daniel to his son Steven. Less than one month later, Donald second-guessed his change in personal representative and executed a new will (the 2010 Will), which reinstated Daniel as his personal representative and also revoked all former wills and codicils. The 2010 Will made no reference to the MPA provision governing power of appointment.

¶ 4. Donald passed away on June 10, 2010. Daniel applied for the informal administration of Donald's 2010 Will on August 16, 2010. Ramona filed a petition for summary confirmation of interest in property under the terms of the MPA. The trial court held an evidentiary hearing on July 22, 2011, and on September 22, 2011, issued a written order admitting Donald's 2010 Will to probate, appointing Daniel as personal representative, and dismissing Ramona's petition for summary confirmation of interest in property.

*Relevant Documents and Evidence*

¶ 5. *The MPA.* The 2002 MPA provided that it would be binding and "in effect until final disposition of all property subject to this Agreement upon termination of the parties' marriage by death or dissolution." Pursuant to Article XIII B., all property belonging to the first spouse to die would be distributable to the

as may be prescribed, the transferees of the property . . . ." Wis. Stat. § 702.01(4) (2009–10). All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

surviving spouse. As to the disposition of property upon the death of the surviving spouse, the MPA instructs at Article XIII:

C. Upon either party's death, with the other party having predeceased, all property of the surviving party, which would be subject to probate administration in the absence of this agreement, shall be distributed to those beneficiaries, in trust or otherwise, as shall be appointed in the surviving party's Will or Revocable Trust by specific reference to this power.

D. If the surviving party fails to exercise this power effectively, then all of the property of the surviving party, which would be subject to probate administration in the absence of this agreement shall be distributed without probate by nontestamentary disposition, pursuant to the provisions of [Wis. Stat. §] 766.58(3)(f), . . . in equal shares to our children, **STEVEN E. SHEPHERD, RAMONA L. CZAPLEWSKI** and **DANIEL E. SHEP-HERD**, or to their issue by right of representation.[2]

Thus, the surviving spouse had a general power of appointment to distribute his or her estate as desired.

---

2 WISCONSIN STAT. § 766.58(3)(f) provides:

(3) . . . [I]n a marital property agreement spouses may agree with respect to any of the following:

. . . .

(f) Providing that upon the death of either spouse any of either or both spouses' property, including after-acquired property, passes without probate to a designated person, trust or other entity by nontestamentary disposition. Any such provision in a marital property agreement is revoked upon dissolution of the marriage as provided in [Wis. Stat. §] 767.375(1). If a marital property agreement provides for the nontestamentary disposition of property, without probate, at the death of the 2nd spouse, at any time after the death of the first spouse the surviving spouse may amend the marital property agreement with regard to property to be disposed of at his or her death unless the marital property agreement

However, in the event of nonexercise, the property distribution would default to Article XIII D.

¶ 6. *The 2007 Will.* After Lulu Mae's death in 2005, Donald executed a will that changed the disposition of the property. This 2007 Will expressly referenced the MPA, stating: "This instrument is drafted pursuant to the power of appointment in Article XIII, Paragraph C. of a Marital Property Agreement dated April 24, 2002." The 2007 Will gifted one-third of Donald's estate to Daniel, one-third to Steven, and the final one-third was to be divided equally between Ramona and her two daughters, Rebecca and Kelly. Thus, the 2007 Will reduced Ramona's portion of Donald's estate from one-third to one-ninth.

¶ 7. *The 2010 Codicil.* In March 2010, Donald executed a codicil changing the designated personal representative of his estate from Daniel to Steven.

¶ 8. *The 2010 Will.* In April 2010, Donald second-guessed his decision to change his designated personal representative. On April 15, Donald executed a will that reinstated Daniel as the personal representative but left the disposition of property unchanged.[3] The 2010

---

expressly provides otherwise and except to the extent property is held in a trust expressly established under the marital property agreement.

[3] The 2010 Will provides at Article IV:

I hereby give, bequeath and devise all the rest, residue and remainder of my estate, real, personal or mixed, of whatever kind or character, wherever situated and whether now owned or hereafter acquired, as follows:

A. One-third (1/3) in equal shares to the following, or in equal shares to their issue per stirpes:

1. My daughter, RAMONA L. CZAPLEWSKI

2. My granddaughter, KELLY WUTTKE

3. My granddaughter, REBECCA KAYSER

Will revoked all former wills and codicils. It made no reference to the MPA provision governing power of appointment.

¶ 9. *The Drafting Attorney's Testimony.* The 2002 MPA, the 2007 Will, the 2010 Codicil, and the 2010 Will were all drafted by Attorney Karl Dovnik, the estate planning attorney who represented Donald and Lulu Mae. Dovnik was the only witness to testify at the evidentiary hearing. When questioned by the trial court about Donald's intent, Dovnik stated that Donald "had a very close relationship with his two granddaughters," and "[Donald] specifically said he did not want [Ramona] to receive an entire one-third, that he felt that his granddaughters deserved something from that as well because of their relationship with him." Dovnik also testified that Donald's intent in creating the 2010 Will was "to replace Steve as the personal representative now and put Dan back in charge." According to Dovnik, Donald "made it clear that he wanted disposition to be exactly the same as on that [2007] Will . . . that he still wanted to share his estate with his granddaughters."

## The Trial Court's Ruling

¶ 10. The trial court found an ambiguity as to whether the 2010 Will was intended by Donald to exercise or amend the power of appointment provision found in the 2007 Will. Thus, the trial court considered the circumstances surrounding the execution of the

B. One-third (1/3) to my son[,] STEVEN E. SHEPHERD, or in equal shares to his issue per stirpes.

C. One-third (1/3) to my son, DANIEL E. SHEPHERD, or in equal shares to his issue per stirpes.

Article IV of the 2007 Will is substantively identical, with only minor differences in comma placement and language.

2010 Will, as well as Dovnik's testimony, the language of the MPA, the 2007 Will, and the 2010 Codicil. The trial court held that Donald intended the distribution of his estate to be governed by the residuary clause in his 2010 Will rather than the 2002 MPA. The trial court ordered that the 2010 Will be admitted to informal probate, that Daniel be appointed personal representative of Donald's estate, and that the estate be distributed as indicated in the 2010 Will, specifically: one-third of the estate to Daniel, one-third to Steven, and the final one-third be divided equally between Ramona and her daughters, Rebecca and Kelly.

¶ 11. Ramona appeals.

## DISCUSSION

¶ 12. Ramona raises several challenges to the trial court's order. Ramona maintains that Donald and Lulu Mae intended that the distribution of the estate would be governed by the 2002 MPA; that Donald did not intend the 2010 Will to exercise the power of appointment contained in the MPA; that the 2010 Will is unambiguous and, therefore, analysis of extrinsic evidence is improper; and that Dovnik's testimony was inadmissible hearsay and barred by Wis. Stat. § 885.16, the dead man's statute. We are not persuaded. We agree with the trial court's conclusions that the distribution of Donald's estate is governed by the 2010 Will.

*I. The MPA Provides Donald with the Unilateral Right to Change the Distribution of Donald's Estate After Lulu Mae's Death.*

¶ 13. The parties agree that the MPA enables Donald to unilaterally designate the transferees of his

449

estate pursuant to his will; it provides him with the power of appointment. Article XIII C. of the MPA provides that "all property of the surviving party, which would be subject to probate administration in the absence of this agreement, shall be distributed to those beneficiaries, in trust or otherwise, as shall be appointed in the surviving party's Will or Revocable Trust by specific reference to this power." In the absence of an effective exercise of power of appointment, the property would be distributed in equal shares to Donald's and Lulu Mae's three children. The trial court determined, and we agree, that the language of the MPA is clear and unambiguously provides Donald with the unilateral right to change the distribution of the property after Lulu Mae's death.[4]

*II. Applying WIS. STAT. § 702.03(1), Donald's and Lulu Mae's Intent for Creating the MPA's Specific Reference Requirement Was to Prevent an Inadvertent Exercise of the Power of Appointment.*

¶ 14. The MPA creates the specific method by which the power of appointment is to be administered. According to the MPA, "Upon either party's death, with the other party having predeceased, all property of the surviving party, which would be subject to probate administration . . . shall be distributed . . . as shall be appointed in the surviving party's Will or Revocable Trust *by specific reference to this power.*" (Emphasis

[4] Although the language of the MPA is clear, we note that the trial court, with respect to Donald's right to revise the distribution set forth in the 2002 MPA, found that Dovnik's testimony supported the conclusion that Donald and Lulu Mae chose not to expressly prohibit unilateral alteration of the disposition of the estate under the MPA.

450

added.) This provision is governed by WIS. STAT. § 702.03, titled "Manifestation of intent to exercise powers," which provides:

> **(1)** Unless the person who executed it had a contrary intention, if a governing instrument, as defined in
>
> [WIS. STAT. §] 854.01(2),[5] or an inter vivos governing instrument, as defined in [WIS. STAT. §] 700.27(1)(c), creates a power of appointment that expressly requires that the power be exercised by any type of reference to the power or its source, the donor's intention in requiring the reference is *presumed to be to prevent an inadvertent exercise of the power.* Extrinsic evidence, as defined in [§] 854.01(1), may be used to construe the intent. (Emphasis added.)

In requiring specific reference, the MPA creates a presumption that the donors intended to prevent an inadvertent exercise of the power. Ramona provides no evidence to show a contrary intent, i.e., to rebut the statutory presumption. Thus, we turn to the 2010 Will to determine whether Donald effectively exercised the power of appointment. The issue, in light of the statutory presumption, is whether Donald's disposition of his property in the 2010 Will was an inadvertent or intentional exercise of the power of appointment.

*III. Donald's 2010 Will Was Intended to Exercise the Power of Appointment in the MPA.*

¶ 15. The interpretation of a will under undisputed facts presents a legal issue that is reviewed without deference to the lower court. *Caflisch v. Staum,*

---

[5] A marital property agreement under WIS. STAT. § 766.58(3)(f) is a "[g]overning instrument" under WIS. STAT. ch. 854, which sets forth the general rules for transfers at death. *See* WIS. STAT. § 854.01(2).

2000 WI App 113, ¶ 6, 235 Wis. 2d 210, 612 N.W.2d 385. The purpose of will construction is to ascertain the testator's intent. *Lohr v. Viney*, 174 Wis. 2d 468, 480, 497 N.W.2d 730 (Ct. App. 1993). Because the language of the will is the best evidence of the testator's intent, we look to it first; if there is no ambiguity or inconsistency in the will's provisions, there is no need for further inquiry into the testator's intent. *Id.* However, if an ambiguity or inconsistency exists in the will's language, we look to the surrounding circumstances at the time of the will's execution. *Id.* If an ambiguity or inconsistency still persists, we may resort to the rules of will construction and extrinsic evidence. *Id.* Ambiguity exists where the will's language is subject to two or more reasonable interpretations, either on its face or as applied to the extrinsic facts to which it refers. *Id.* at 480–81.

¶ 16. Ramona contends that the 2010 Will is unambiguous and, by omitting reference to the power of appointment, demonstrated Donald's intent to *not* dispose of his property through his will. We disagree. The 2010 Will seeks to distribute Donald's estate to identified beneficiaries in a different disposition from that set forth in the MPA, but it fails to specifically reference the power of appointment. Ramona contends that the 2010 Will must be looked at alone, and yet, her argument necessarily requires that we examine the 2010 Will in light of the presumption created by the MPA's required reference to the power. That presumption contemplates an inquiry into whether the testator intended to exercise the power—here, that inquiry is whether Donald's 2010 disposition of his estate was intentional or inadvertent. *See* Wis. Stat. § 702.03(1).

¶ 17. Here, if we were to accept Ramona's argument, the 2010 Will's distribution of the very same

property to which the power of appointment relates is meaningless. If a failure to reference the power of appointment would render an instrument of execution meaningless and inoperable, it becomes reasonably plain that the testator intended the instrument to exercise the power of appointment.[6] At the very least, it creates an ambiguity—what is the purpose of Donald's stated disposition if the 2010 Will has no effect whatsoever? Thus, the 2010 Will itself is inherently ambiguous, because it attempts to effect a distribution that, Ramona argues, is nugatory. The surrounding circumstances further confirm the ambiguity—the 2010 Will replaced the prior 2007 Will, which specifically referenced the power of appointment, stating: "This instrument is drafted pursuant to the power of appointment in Article XIII, Paragraph C. of a Marital Property Agreement dated April 24, 2002." If, after examining

---

[6] Although it did not involve a specific reference to the power of appointment, we are nevertheless guided by the logic of *First Wisconsin Trust Co. v. Helmholz*, 198 Wis. 573, 225 N.W. 181, 182–83 (1929), as to the ambiguity resulting from an inoperable will. In *Helmholz*, the testator failed to reference a power of appointment, thus the court was left to ascertain and give force and effect to her intention. *Id.* at 183. In doing so, our supreme court recognized that there are certain instances when, absent reference to a power of appointment, language in a will is construed as an exercise of the power of appointment on the part of the testator: (1) where the power is either expressly referred to in the instrument of execution, or (2) where the property to which the power relates is specifically mentioned in the instrument, or (3) where the instrument of execution would become meaningless and wholly inoperative. *Id.* The court reasoned that, in any of these instances, it is reasonably plain that the testator intended by the instrument to execute the power. *Id.* Thus in *Helmholz*, the court looked at surrounding circumstances to determine whether the donee knew of and intended to exercise the power of appointment.

453

the surrounding circumstances at the time of a will's execution, the ambiguity or inconsistency persists, it is appropriate to resort to extrinsic evidence and the rules of will construction. *See Lohr*, 174 Wis. 2d at 484. In doing so, the drafting attorney's testimony concerning the statements the testator made is admissible as extrinsic evidence of the testator's intent. *Id.* at 485 (citing *Mangel v. Strong*, 51 Wis. 2d 55, 69, 186 N.W.2d 276 (1971)).

¶ 18. Our analysis is supported by the legislative changes to WIS. STAT. § 702.03. We note that prior to its repeal and recreation in 1998, § 702.03(1) (1995–96) stated:

> **(1)** If the donor has explicitly directed that no instrument shall be effective to exercise the power unless the instrument contains a reference to the specific power, in order to exercise effectively such a power the donee's instrument must contain a specific reference to the power or the creating instrument and expressly manifest an intent to exercise the power or transfer the property covered by the power.

Thus, an executing instrument was required to contain both the specific reference to the power and expressly manifest an intent to exercise the power or transfer property. *See id.* However, the current version of WIS. STAT. § 702.03(1), which was patterned after UNIFORM PROBATE CODE § 2–704 (amended 2010), simply recognizes that the specific power of appointment requirement creates a presumption that the specific reference was intended to prevent inadvertent exercise. This presumption can be overcome if it can be demonstrated that the donee had knowledge of and intended to exercise the power. *See id.*, cmt.; *see also Motes/Henes Trust v. Motes*, 761 S.W.2d 938, 940 (Ark. 1988) (donee's intended exercise given effect despite failure to use

specific reference when drafting attorney's testimony presented very strong evidence of intent). Insofar as Ramona contends that the current statute still requires an express reference to the power of appointment, we disagree. The legislative changes to § 702.03 (1995–96) reflect the increasing focus of the Wisconsin Probate Code on giving effect to the testator's intent when possible. *See* Howard S. Erlanger, *Wisconsin's New Probate Code,* WIS. LAWYER (Oct. 1998), http://www.wisbar.org/AM/Template.cfm? Section=Wisconsin_Lawyer&template=/CM/Content Display. cfm&contentid=50176.

■

¶ 19. Here, the trial court appropriately considered the 2007 Will, the 2010 Codicil, and the drafting attorney's testimony. The 2007 Will establishes that Donald knew of and intended to exercise the power of appointment. Dovnik, the attorney who drafted all of the documents in question, testified that the failure of the 2010 Will to reference the power of appointment was due to a drafting error and not a change in Donald's intent as to the distribution of his estate. Ramona presented no evidence to refute Dovnik's testimony. Thus, the undisputed evidence establishes that Donald intended to distribute his property according to the dispositive provisions of his 2010 Will. We conclude that the evidence established Donald's intent to exercise the power of appointment provided for in the MPA through his 2010 Will.[7]

---

[7] Given this disposition, we need not reach Ramona's additional argument that, pursuant to WIS. STAT. § 766.58(3)(f) and (4), the 2010 Will was an impermissible attempt to amend the MPA.

*IV. Attorney Dovnik Is Not Barred from Testifying in this Case; Wisconsin Courts Generally Allow Drafting Attorneys to Testify.*

■ ■

¶ 20. As a final matter, we reject Ramona's contention that Dovnik's testimony was inadmissible under Wis. Stat. § 885.16 and otherwise constituted inadmissible hearsay. A trial court's decision to admit or exclude evidence is a discretionary determination, and we affirm discretionary decisions if they have a reasonable basis and apply the correct law to the facts of record. *Bell v. Neugart*, 2002 WI App 180, ¶ 15, 256 Wis. 2d 969, 650 N.W.2d 52. In challenging the trial court's discretionary decision, Ramona ignores established Wisconsin law recognizing that the testimony of a drafting attorney as to the statements made to him or her by the testator is admissible on the question of intent once such extrinsic evidence becomes admissible. *See Mangel*, 51 Wis. 2d at 69. We nevertheless address each of Ramona's objections in turn.

¶ 21. Wisconsin Stat. § 885.16, the dead man's statute, provides restrictions on witness examination pertaining to transactions with deceased or insane persons. It prohibits a witness's testimony if the witness meets three conditions: (1) a specified interest contemplated by the statute, (2) the witness's testimony relates to a transaction or communication by the witness personally with a deceased individual, and (3) the opposing party derives a specified interest in the action through the deceased. *Id.* This court has recognized that the core meaning of § 885.16 is that it disqualifies a witness to a transaction or communication with a decedent from testifying about that transaction or

communication in his or her favor, or in favor of any party to the case claiming under the witness. *Bell*, 256 Wis. 2d 969, ¶ 17.

¶ 22. Ramona argues that Dovnik is an interested person because how the 2010 Will is construed may cause or prevent a malpractice claim against him by beneficiaries and interested parties, specifically Kelly and Becky. However, Ramona's argument runs contrary to Wisconsin case law that a witness's interest must be "present, certain and vested, not just a remote or contingent interest" in order for WIS. STAT. § 885.16 to bar testimony. *See Giese v. Reist*, 91 Wis. 2d 209, 224, 281 N.W.2d 86 (1979). Because any interest in avoiding a threat of malpractice, real or imagined, would be a remote or contingent interest, the trial court properly exercised its discretion in permitting Dovnik to testify.

¶ 23. Ramona also argues that Dovnik's testimony was barred as inadmissible hearsay. Again, Ramona's argument fails. WISCONSIN STAT. § 908.03(3) allows for an exception for evidence describing the declarant's then-existing state of mind; this exception can be used to describe declarant's intent, plan, motive, design, or mental feeling. This exception is thought of as able to "look forward in time," or, in other words, can be used to prove that the declarant later acted in conformity with a certain mental state. JAY E. GRENIG & DANIEL D. BLINKA, WISCONSIN CIVIL RULES HANDBOOK § 908.03:3 (2012). The trial court did not err in permitting Dovnik to testify as to Donald's intent to dispose of his property pursuant to the disposition of his 2010 Will.

## CONCLUSION

¶ 24. We conclude that the trial court properly ordered that Donald's 2010 Will be admitted into infor-

mal probate, that Daniel be appointed personal representative of Donald's estate, and that the estate be distributed as indicated in the 2010 Will, specifically: one-third of the estate to Daniel, one-third to Steven, and the final one-third be divided equally between Ramona and her daughters, Rebecca and Kelly. We affirm the trial court's order.

*By the Court.*—Order affirmed.