**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 28, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1887-FT**

Cir. Ct. No. **2019PR84**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

IN RE THE ESTATE OF MARION R. ROESLER:

SCOTT AUSTIN,

    APPELLANT,

 V.

RICKY ROESLER AND ANGELA CAMPBELL,

    RESPONDENTS.

APPEAL from an order of the circuit court for Columbia County: TROY D. CROSS, Judge. *Affirmed.*

Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. Marion Roesler executed a will ("the will") directing that, upon her death, all of her property be transferred to her husband or, in the event that her husband predeceased her, to her three children. The will also directs that, if any of her three children predeceased Marion and left issue, then "his or her share shoul[d] go to the residual heirs, share and share alike." At the time of Marion's death, she was predeceased by her husband and one of her children. Based on a disagreement between Angela Campbell (a/k/a Angela Roesler), Marion's daughter, and Scott Austin, Marion's grandson (the son of Marion's predeceased child), regarding the meaning of the phrase "residual heirs" in the context of the will, Marion's estate ("the estate") filed a petition with the Columbia County Circuit Court to construe that phrase. The circuit court determined that "residual heirs" refers to Marion's two surviving children, not the issue of Marion's predeceased child. We affirm.[1]

## BACKGROUND

¶2 There is no dispute as to the following material facts.

¶3 Marion Roesler executed her will in 1977. The will directs that upon her death all of Marion's property be transferred to her husband, Glenn Roesler. The will also contains the following provision (generally, "the provision") which

---

[1] In a November 18, 2021 order, this court placed this matter on the expedited appeals calendar, and the parties have submitted memo briefs. *See* WIS. STAT. RULE 809.17 (2019-20). Briefing was completed on February 7, 2022, and the matter was assigned to this panel on March 9, 2022. We commend the parties to this appeal, and their counsel, for their cooperation in reaching a quick and efficient resolution of this appeal through use of the Expedited Appeals Program. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

directs the distribution of Marion's property in the event that Glenn predeceased her:

> THIRD: In the event that my Husband should predecease me, I then do hereby give, devise and bequeath all the rest of my property both real and personal and wheresoever situated unto my children, Kathleen Austin, Ricky Roesler and Angela Roesler, share and share alike. In the event that any of my children should predecease me, leaving issue, then it is my wish and desire that his or her share shoul[d] go to the residual heirs, share and share alike.

¶4 At the time of Marion's death in 2019, she was predeceased by her husband and her daughter, Kathleen. Kathleen was survived by one child, Scott Austin. Probate proceedings were commenced in the circuit court. Angela Campbell argued that the provision excludes Scott as a beneficiary.[2] Scott disagreed, and the estate filed a petition to construe the will and resolve the meaning of the phrase "residual heirs" as used in the provision. The estate's petition explained that the phrase "residual heirs" could, in effect, be interpreted as including Scott as Kathleen's surviving child, or the phrase could be interpreted to exclude Scott and refer only to Angela and Ricky, Marion's surviving children.

¶5 The circuit court held a hearing on the petition. The court reviewed the wills of Marion and Glenn. The court also heard testimony from Angela and Scott, as well as from an estate planning attorney presented by Scott as an expert witness and from the secretary for the deceased attorney who prepared the wills. The court concluded that the phrase "residual heirs" refers to Marion's surviving

---

[2] Ricky Roesler, Marion's other surviving child, did not take a position on this issue in the circuit court and has not filed a brief in this appeal.

children, Angela and Ricky, and does not refer to Scott, the issue of Marion's predeceased child. Scott appeals.

¶6 Additional material facts are discussed later in this opinion.

## DISCUSSION

¶7 We begin by setting forth our standard of review and governing principles for the interpretation of a will.

### I. Standard of Review and Governing Principles.

¶8 "The interpretation of a will under undisputed facts presents a legal issue that is reviewed without deference to the [circuit] court." *Czaplewski v. Shepherd*, 2012 WI App 116, ¶15, 344 Wis. 2d 440, 823 N.W.2d 523. Here, the material facts are not in dispute.

¶9 "The purpose of will construction is to ascertain the testator's intent." *Lohr v. Viney*, 174 Wis. 2d 468, 480, 497 N.W.2d 730 (Ct. App. 1993) (citing *Madison Gen. Hosp. Med. & Surgical Found., Inc. v. Volz*, 79 Wis. 2d 180, 186, 255 N.W.2d 483 (1977)). When interpreting the language of a will, "every provision expressed by the testator in his [or her] will [should] be given effect, if reasonably possible, and … the various provisions of the will should be so construed as to be consistent with one another, rather than to be conflicting." *Lindsay v. Lindsay*, 260 Wis. 19, 22, 49 N.W.2d 736 (1951).

¶10 Will interpretation begins with "the language of the will" because that is "the best evidence of the testator's intent." *Lohr*, 174 Wis. 2d at 480. "[I]f there is no ambiguity or inconsistency in the will's provisions, there is no need for further inquiry into the testator's intent." *Id.* Ambiguity exists if the language of

the will is susceptible of "two or more reasonable interpretations, either on its face or as applied to the extrinsic facts to which it refers." *Id.* at 480-81. "When determining whether an ambiguity or inconsistency exists in the will's language, we look at the will not as a group of independent phrases, but rather as an entire instrument." *Id.* at 481.

¶11 "[I]f an ambiguity or inconsistency exists in the will's language, we look to the surrounding circumstances at the time of the will's execution." *Id.* at 480. When examining the surrounding circumstances, we consider the "facts and circumstances which were (or ought to have been) in the mind of the testator" when the testator selected the words for the will. *Gehl v. Reingruber*, 39 Wis. 2d 206, 211, 159 N.W.2d 72 (1968). Our goal in this inquiry is to "determine the reasonable meaning of the words used, from the testator's point of view." *Lohr*, 174 Wis. 2d at 484 (citing *Gehl*, 39 Wis. 2d at 211-13).

¶12 "If an ambiguity or inconsistency still persists, we may resort to the rules of will construction and extrinsic evidence." *Id.* at 480. WISCONSIN STAT. § 854.01(1) defines "extrinsic evidence" in the context of will construction as "evidence that would be inadmissible under the common law parole evidence rule or a similar doctrine because the evidence is not contained in the governing instrument to which it relates."[3] Sec. 854.01(1).

---

[3] A will is a "governing instrument" under WIS. STAT. § 854.01(2).

## II. Marion Intended That Her Predeceased Child's Share Would Pass to Marion's Surviving Children.

¶13  Scott argues that the disputed provision of the will is not ambiguous and contends that the circuit court erred because the language of that provision is sufficient to ascertain Marion's intent that the share of Marion's predeceased child, Kathleen, passes to Kathleen's issue, Scott. Angela argues that the provision is ambiguous and that the surrounding circumstances and extrinsic evidence establish that Marion intended that her predeceased child's share passes to Marion's surviving children, Angela and Ricky.[4]

### A. The Language of the Will.

¶14  As explained above, our first task is to determine whether the language of the will is ambiguous. *Lohr*, 174 Wis. 2d at 480. For the following reasons, we conclude that it is.

¶15  To repeat, according to the applicable provision of the will, if one of Marion's children predeceases Marion and leaves "issue," then "his or her share shoul[d] go to the residual heirs, share and share alike."[5] The will does not define the disputed phrase "residual heirs." We now consider whether case law or

---

[4] At one point in her briefing in this court, Angela states that "[a]s a whole, there is nothing ambiguous about Marion Roesler's will." Scott asserts that this is Angela's concession that the will is unambiguous. However, it is clear from the substance of her briefing in this court that Angela argues that the will is ambiguous.

[5] WISCONSIN STAT. chs. 851 to 882 concern probate proceedings, intestate succession, wills, and transfers at death. WISCONSIN STAT. § 851.002 states: "The definitions in [WIS. STAT. §§] 851.01 to 851.31 apply to chs. 851 to 882." Sec. 851.002. WISCONSIN STAT. § 851.13 defines "issue" as including "children." Sec. 851.13. The parties do not dispute that Scott is Kathleen's "issue."

statutes assist in defining, and resolving ambiguity regarding, that phrase as it is used in the provision.

¶16     The parties have not informed us of any Wisconsin case law precedent that uses the phrase "residual heirs," and our research has uncovered none.  Courts of other states have not interpreted the meaning of the phrase "residual heirs" as used in a will or other testamentary instrument.  A Pennsylvania opinion on which Angela relies uses the phrase in a discussion of "per capita" and "per stirpes" distributions in the context of an intestate estate, but does not shed any light on the meaning of the phrase as used in Marion's will.  *See Estate of McCutcheon*, 699 A.2d 746, 750 (Pa. Super. Ct. 1997).

¶17     Wisconsin courts have not examined the use of the similar phrase "residuary heir" as used in a will or other testamentary instrument, although three Wisconsin opinions have used the phrase "residuary heirs" as shorthand for those persons who receive the "residue" of an estate.  *See Vierck v. Richardson*, 119 Wis. 2d 394, 395, 351 N.W.2d 169 (Ct. App. 1984); *Rosnow v. Rosnow*, 273 Wis. 438, 440, 78 N.W.2d 750 (1956); *O'Brien v. National Sur. Corp.*, 246 Wis. 471, 474, 17 N.W.2d 574 (1945).  Those opinions do not assist our interpretation of the provision because Marion did not leave a "residue" of her estate to any "heirs."  Similarly, opinions from other states have used the phrase "residual heirs" to refer generally to the beneficiaries of a "residual clause" in a will, which as noted Marion's will does not contain.  *See, e.g.*, *Administration of the C.H. Young Revocable Living Tr.*, 2008 SD 43, ¶¶3, 11, 751 N.W.2d 715.

¶18     We next consider the individual term "residual."  As just noted, in Wisconsin case law the terms "residual," "residue," and "residuary" in this context generally refer to the portion of a testator's estate that is not otherwise explicitly

disposed of by a provision in a will. As an example, in **Bradley v. Bradley**, 123 Wis. 186, 101 N.W. 393 (1904), our supreme court provided definitions of the term "residue":

- "All, of which no effectual disposition is made by will other than [by] the residuary clause."

- "All property subject to be bequeathed by her not otherwise effectually disposed of."

**Bradley**, 123 Wis. at 188. The meaning of these terms is similar today. WISCONSIN STAT. § 854.07 states in pertinent part:

> (1) … [I]f an attempted transfer under a governing instrument fails, the attempted transfer becomes part of the residue of the governing instrument. This subsection does not apply if the attempted transfer is itself a residuary transfer.
>
> (2) … [I]f the residue of a governing instrument is to be transferred to 2 or more persons, the share of a residuary transferee that fails passes to the other residuary transferees in proportion to the interest of each in the remaining part of the residue.

Sec. 854.07(1)-(2);[6] *see also* WIS. STAT. §§ 853.55 and 853.57 (using the phrase "residuary estate" in the context of a basic, statutory form will).

¶19     In the present case, the use of the term "residual" does not match the meaning of the same or similar terms as set forth in **Bradley** and the quoted statutes. More specifically, Marion's will does not use the term "residual" to refer

---

[6] WISCONSIN STAT. § 854.02 states: "This chapter applies to all statutes and governing instruments that transfer property at death."

to property that was not explicitly disposed of by her will. Rather, her will does dispose of the share of the predeceased child by passing that share to the "residual heirs."

¶20 Case law and statutes do not assist in resolving ambiguity in the provision. We next consider a dictionary definition of the word "residual." *See Frisch v. Howard*, 271 Wis. 342, 346, 73 N.W.2d 602 (1955) (holding that, when a will does not provide a plain meaning of a word, this court may consult a dictionary definition); *Grochowski v. Larson*, 196 Wis. 2d 231, 234-35, 538 N.W.2d 802 (Ct. App. 1995) (relying on a dictionary definition to interpret language in a will). In this situation, "residual" must mean "remaining." *See Residual*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Of, relating to, or constituting a residue; remaining; left over.").

¶21 We now consider the meaning of the term "heir." Neither Angela nor Scott disputes that Marion's will uses the term "heirs" in referring to persons who may receive property pursuant to the provision.

¶22 Therefore, the phrase "residual heirs" as used in Marion's will is reasonably construed as meaning, in effect, the "remaining heirs." Of course, this does not answer the question of *whose* "remaining heirs" are referred to in Marion's will, and that is a reason the provision is ambiguous.[7]

¶23 With that in mind, one reasonable interpretation of the provision is that the phrase "residual heirs" refers to the issue of Marion's predeceased child.

---

[7] Scott presented testimony from an estate planning attorney. The circuit court did not refer to this testimony in its decision. The testimony was, in effect, a summary of Scott's argument.

9

Under this interpretation, Kathleen's share would pass to Scott, her child. However, another reasonable interpretation is that "residual heirs" refers to Marion's two surviving children. Under this interpretation, Kathleen's share would be left to Ricky and Angela, Marion's surviving children. Neither of these interpretations is inconsistent with the language of the will. Thus, the phrase "residual heirs" is ambiguous because it is susceptible of "two or more reasonable interpretations." *See Lohr*, 174 Wis. 2d at 480-81.

¶24    Scott argues that the phrase "residual heirs" is not ambiguous because Angela's interpretation—*i.e.*, that a predeceased child's share will pass to Marion's surviving children—is not reasonable in that it would impermissibly make the second sentence of the provision "mere surplusage."[8] Specifically, Scott contends:

> If [Marion's] intent was to provide that a predeceased child's share would lapse, regardless of whether that child left issue, then there would have been no point to include the second sentence [of the provision]…. Instead, [the attorney who drafted the will] could have simply stated that any predeceased child's share would lapse or stated that the beneficiaries would just be the testator's surviving children.

---

[8] We repeat the entire provision for purposes of discussing Scott's argument:

> THIRD:    In the event that my Husband should predecease me, I then do hereby give, devise and bequeath all the rest of my property both real and personal and wheresoever situated unto my children, Kathleen Austin, Ricky Roesler and Angela Roesler, share and share alike. In the event that any of my children should predecease me, leaving issue, then it is my wish and desire that his or her share shoul[d] go to the residual heirs, share and share alike.

The necessary premise of Scott's argument is that, for Angela's interpretation to succeed, the disputed provision would have to have been drafted as he asserts. But, Scott gives no reasonable basis to conclude that Angela's interpretation can be correct only if the provision had been drafted as he now contends. In other words, Angela's interpretation of the provision may be correct even though the intent of the provision could have been drafted in one sentence, rather than two, or with different verbiage than is used in Marion's will.

¶25 Thus, we reject Scott's argument that Angela's interpretation of the phrase "residual heirs" is unreasonable and conclude that the disputed provision of the will is ambiguous.

**B. Surrounding Circumstances at the Time of the Will's Execution.**

¶26 The next step in our analysis is to examine the surrounding circumstances at the time of the will's execution. *See id.* at 480. The parties primarily focus on testimony provided during the circuit court proceedings.

¶27 Angela testified that Marion viewed her own children as her responsibility, and viewed her grandchildren as her children's responsibility. Scott testified that he never requested financial assistance from Marion for his business and that Marion never provided him with any financial assistance.

¶28 Angela asserts that this testimony demonstrates Marion's intent that Scott, Marion's grandchild, would not receive any of Marion's property under the will. Scott responds that Angela's assertion is "unsupported" because Angela provided only the broad observation that Marion treated her grandchildren less favorably than her children. We agree with Scott and conclude that the testimony regarding Marion's purported parenting (and grand-parenting) style does not

resolve the ambiguity of the phrase "residual heirs." Put another way, the broad generalization advanced by Angela does not make manifest Marion's intent to withhold any portion of her estate from her grandchildren.[9]

## C. Extrinsic Evidence.

¶29 Because our examination of the language of the will and the surrounding circumstances fails to resolve the ambiguity in the provision, we now consider extrinsic evidence to ascertain Marion's intent. *See id.* At this step, the parties primarily dispute the importance of the language of the will of Glenn, Marion's husband. Glenn's will states in pertinent part:

> THIRD: In the event that my wife should predecease me, I then do hereby give, devise and bequeath all the rest of my property both real and personal and wheresoever situated unto my children, Kathleen Austin, Ricky Roesler and Angela Roesler, share and share alike. In the event that any of my children should predecease me, leaving issue, it is my wish and desire that his or her share should go to his or her issue. In the event that he or she leave no issue, then it is my wish and desire that this specific bequest should lapse and the share should go to the residual heirs, share and share alike.[10]

---

[9] The secretary for the attorney who drafted the will testified that the drafting attorney's ordinary practice was to dictate the language of wills for the secretary to type. The secretary stated that the drafting attorney was "very meticulous" and would proofread the wills that she had typed. This testimony about the drafting attorney's typical drafting procedure for wills also does not illuminate Marion's intent.

[10] As recognized by the circuit court, the copy of Glenn's will in the record is so blurry that it is difficult, if not impossible, to read some of the text. Nonetheless, Scott provides the full language of the relevant provision in his brief-in-chief filed in this court, and Angela does not dispute the accuracy of that language. We remind counsel to provide the most legible copies of exhibits for the record and, when appropriate, also provide explanations as to any portions that may be illegible or only faintly legible.

12

The parties do not dispute that the wills of Marion and Glenn were drafted by the same attorney and were executed on the same day in 1977.

¶30    We agree with the circuit court that the language of Glenn's will assists in the interpretation of the meaning of the phrase "residual heirs" as it was understood by Marion, Glenn, and the drafting attorney.  As noted above, Glenn's will specifically directs that a predeceased child's share would pass to his or her issue.  ("In the event that any of my children should predecease me, leaving issue, it is my wish and desire that his or her share should go to his or her issue.").  The next sentence of Glenn's will states that, if the predeceased child leaves no issue, then that child's share will "lapse" and "go to the residual heirs."  This language clearly indicates that, even though Glenn's will does not explicitly refer to "the residual heirs of Glenn," the drafting attorney understood the phrase "residual heirs" to mean the testator's surviving children, not the issue of a predeceased child.  Because the drafting attorney attached this meaning to the phrase "residual heirs" in Glenn's will, it reasonably follows that the drafting attorney understood that phrase to have the same meaning when simultaneously drafting Marion's will.  Therefore, we conclude that the use of the phrase "residual heirs" in these two wills establishes Marion's intent that a predeceased child's share will pass to Marion's surviving children, Angela and Ricky, not Kathleen's issue, Scott.  Scott argues to the contrary, but we reject his contentions.

¶31    Scott argues that the wills of Marion and Glenn should be read consistently, such that the disposition of a predeceased child's share under Marion's will is the same as the disposition of a predeceased child's share under Glenn's will.  Scott asserts that "it would be 'extremely unusual' for a husband and wife to have different plans for their children in their respective Wills."  We disagree.  Scott has not provided any evidence in the record, or any plausible

13

argument, that Marion intended that her distribution plan must resemble that of her husband. In addition, Scott's argument would result in an entirely different meaning of the phrase "residual heirs" in each of the wills. Scott interprets "residual heirs" in Glenn's will as referencing Glenn's surviving children, but interprets that same phrase in Marion's will as referencing a predeceased child's issue. For reasons already discussed, we do not accept that contention.

¶32    Scott also argues that the difference in language between the Marion and Glenn wills could merely be the result of the drafting attorney's "choice of words during the dictation" rather than an intent to establish different distribution plans in each will. However, Scott points to no evidence in the record to support his contention that the drafting attorney was inexact in dictating the two wills or that the language used in the provision of Marion's will fails to express Marion's intent. The "language of the will is the best evidence of the testator's intent." *See id.* at 480. Thus, it reasonably follows that the drafting attorney chose the language for the two wills with the understanding that the phrase "residual heirs" would have the same meaning in each will.

¶33    Finally, Scott argues that WIS. STAT. § 854.06, Wisconsin's "Antilapse Statute," applies to the will.[11] This statute provides in relevant part that, if a beneficiary dies before the testator and leaves surviving issue, then that beneficiary's share passes to the issue "per stirpes" unless the testator had "intent contrary to any provision" of that statute. Sec. 854.06(3), (4)(bm); *see also* WIS.

---

[11] Pursuant to WIS. STAT. § 854.02, WIS. STAT. ch. 854 "applies to all statutes and governing instruments that transfer property at death." Sec. 854.02. Further, WIS. STAT. § 853.27 states: "The rights under a will of a beneficiary who predeceases the testator are governed by [WIS. STAT. §] 854.06." Sec. 853.27.

STAT. § 854.04(1) (stating that per stirpes distribution, also referred to as "by right of representation," requires allocating one share for each surviving child and each deceased child who left issue, with each deceased child's share passing to his or her issue).  Scott contends that § 854.06(3) applies and supports his position because in Marion's will there is no indication of a contrary intent to a per stirpes distribution.

¶34    We conclude that there is contrary intent to a per stirpes distribution in Marion's will.  *See* WIS. STAT. § 854.06(4)(bm).  First, as explained earlier, the uses of the phrase "residual heirs" in the wills of Marion and Glenn establishes Marion's intent that a predeceased child's share would pass to Marion's surviving children, not to the predeceased child's issue.  This interpretation of "residual heirs" is directly contrary to Scott's argument that Marion intended a per stirpes distribution of a predeceased child's share.  *See id.* ("Extrinsic evidence may be used to construe the [contrary] intent.").  Second, the use of phrase "share and share alike" in the provision signals a contrary intent.  As Angela points out, our supreme court has stated that this phrase creates a presumption that the testator intended a per capita distribution as opposed to a per stirpes distribution.  *See* ***Mahon v. Security First Nat'l Bank***, 56 Wis. 2d 171, 177, 201 N.W.2d 573 (1972) (noting the "general rule favoring per capita distribution where the wills incorporate the words 'equally' or 'share and share alike.'"); ***Doheny v. Crawford***, 260 Wis. 9, 17, 49 N.W.2d 716 (1951) ("[A] *per capita* distribution was intended by reason of the use of words such as 'in equal shares', or 'share and share alike' or any other equivalent words intimating an equal division."); WIS. STAT. § 854.04(4) ("Except as provided in sub. (6), if a statute or governing instrument calls for property to be distributed to a group or class 'per capita,' the property is divided into as many shares as there are surviving members of the group or class,

and each member is allocated one share.").  In sum, we conclude based on the tools of interpretation applied above that Marion did not intend for her predeceased child's share to pass to that child's issue per stirpes.  Accordingly, we conclude that WIS. STAT. § 854.06(3) does not control our interpretation of the provision.

## CONCLUSION

¶35  For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.